[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16492

_____

D.C. Docket No. 8:14-cv-01732-VMC-TBM

NORIS BABB,

Plaintiff - Appellant,

versus

SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 1, 2021)

**ON PETITION FOR REHEARING**

Before NEWSOM, ED CARNES, and SILER,* Circuit Judges.

NEWSOM, Circuit Judge:

We return, once again, to the case of Dr. Noris Babb.  Babb is a clinical pharmacist who works at a VA medical center in Florida.  Years ago now, she sued the Secretary of the Department of Veterans Affairs based on claims arising out of her employment at the hospital.  In particular, Babb asserted claims for (1) gender discrimination, (2) age discrimination, (3) retaliation for engaging in activities protected by Title VII, and (4) hostile work environment.  The Secretary prevailed across the board at summary judgment.  We reversed and remanded on Babb's gender-discrimination claim but affirmed on everything else, although we noted that we might have ruled in Babb's favor on her age-discrimination and retaliation claims if our decision in *Trask v. Secretary, Department of Veterans Affairs*, 822 F.3d 1179 (11th Cir. 2016), hadn't stood in the way.

The Supreme Court granted certiorari on Babb's age-discrimination claim and reversed.  So, on remand back to us, we reversed and remanded on that claim and (again) on the gender-discrimination claim, but we affirmed (again) on the Title VII retaliation and hostile-work-environment claims.

---

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

Babb petitioned for rehearing on the latter two issues. She argued (1) that the Supreme Court's decision in her case also undermined our *Trask*-based rejection of her Title VII retaliation claim and (2) that an intervening decision of ours, *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020), gutted the precedent on which we had relied in rejecting her hostile-work-environment claim. We granted rehearing.

At this juncture, we confront two main issues. The first is how to handle Babb's Title VII retaliation claim. She argues that because the provision of the Age Discrimination in Employment Act (ADEA) that the Supreme Court interpreted in her case is materially identical to the pertinent provision in Title VII, the Supreme Court's analysis of the former dictates our reading of the latter. As far as the text goes, the government agrees with Babb, but it nonetheless insists that our decision in *Trask* compels us, once again, to rule against her. The second issue is whether our decision in *Monaghan* requires reversal on Babb's hostile-work-environment claim.

We hold that the Supreme Court's decision in Babb's case undermined *Trask* to the point of abrogation and that the standard that the Court articulated there now controls cases arising under Title VII's nearly identical text. We further hold that *Monaghan* clarified our law governing what we'll call "retaliatory-hostile-work-environment" claims, and that the standard for such claims is, as we

3

said there, the less onerous "might have dissuaded a reasonable worker" test articulated in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), and *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008), rather than the more stringent "severe or pervasive" test found in *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012).

We VACATE the district court's grant of summary judgment on Babb's Title VII retaliation and hostile-work-environment claims and REMAND for the district court to consider those claims under the proper standards.

# I

## A

Born in 1960, Noris Babb is now a clinical pharmacist at a VA hospital in Florida, where she has worked since 2004.[1] In 2010, the VA instituted a new initiative governing promotions for pharmacists who, like Babb, spend at least 25% of their time engaged in "disease state management"—*i.e.*, seeing patients and

---

[1] The Supreme Court, this Court, and the district court have canvassed the facts here in some detail. *See Babb v. Wilkie*, 140 S. Ct. 1168, 1171–72 (2020); *Babb v. Sec'y, Dep't of Veterans Affairs*, 743 F. App'x 280, 283–86 (11th Cir. 2018); *Babb v. McDonald*, No. 8:14-CV-1732-T-33TBM, 2016 WL 4441652, at *1–6 (M.D. Fla. Aug. 23, 2016).

writing prescriptions for them without a physician's sign-off. Babb sought a promotion.

Things didn't go smoothly with the promotions program. Specifically, Babb and some of her co-workers thought that the VA implemented its initiative in ways that discriminated on the basis of age and gender. Two of Babb's colleagues filed complaints with the Equal Employment Opportunity Commission (EEOC) in 2011. Babb sent emails and eventually gave a deposition in support of her colleagues' complaints, and she filed her own EEOC complaint in May 2013. That's what eventually led her to this Court and, then, to the Supreme Court. *See Babb v. Sec'y, Dep't of Veterans Affairs*, 743 F. App'x 280, 283–84 (11th Cir. 2018).

As relevant here, Babb's ADEA claim and her Title VII retaliation claim both largely hinge on the same facts, which the Supreme Court concisely summarized as follows:

> First, in 2013, the VA took away Babb's "advanced scope" designation, which had made her eligible for promotion on the Federal Government's General Scale from a GS-12 to a GS-13. Second, during this same time period, she was denied training opportunities and was passed over for positions in the hospital's anticoagulation clinic. Third, in 2014, she was placed in a new position, and while her grade was raised to GS-13, her holiday pay was reduced. All these actions, she maintains, involved age discrimination, and in support of her claims, she alleges, among other things, that supervisors made a variety of age-related comments.

*Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020) (footnote omitted). Some of the "comments" to which the Supreme Court referred were both age- and gender-

related.  For example, a pharmacy administrator described "Magic Mike" as a "middle-aged woman movie" in a conversation with Babb.  *Babb*, 743 F. App'x at 291.  And, while the origins of a vulgar email were under investigation, the same individual called Babb a "mow mow," which Babb took as a "grandma comment." *Id*.

## B

In 2014, Babb sued the Secretary of the Department of Veterans Affairs. She alleged that she had been the victim of gender and age discrimination, suffered retaliation based on protected EEOC activity, and endured a hostile work environment.  For those reasons, she said, the VA had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*

The district court granted the Secretary summary judgment in full.  We reversed and remanded on Babb's gender-discrimination claim but affirmed on her ADEA, Title VII retaliation, and hostile-work-environment claims.  *See Babb*, 743 F. App'x at 283.  Along the way, we noted that if not for circuit precedent, we might have ruled in Babb's favor on both the ADEA and Title VII retaliation claims.  *See id.* at 287, 290; *id.* at 288, 290 (describing *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179 (11th Cir. 2016), as questionable-but-controlling

6

authority)).  But, we explained, under the prior-panel-precedent rule we didn't have that option.  *Id.* at 288, 290.

So Babb took her case to a court with more options.  The Supreme Court granted certiorari on just one question: Whether the federal-sector provision of the ADEA required Babb to prove that age was a but-for cause of a challenged personnel action.  *Babb v. Wilkie*, 139 S. Ct. 2775 (2019) (mem.).

The Court answered that question "no."  *Babb*, 140 S. Ct. at 1178.  "The plain meaning of the statutory text," the Court held, "shows that age need not be a but-for cause of an employment decision in order for there to be a violation of § 633a(a)."  *Id.* at 1172.  In so holding, the Court zeroed in on the key statutory language:  "[P]ersonnel actions . . . shall be made free from any discrimination based on age . . . ."  29 U.S.C. § 633a(a).  The Court explained that § 633a(a)'s terms required a plaintiff to show only that "age discrimination plays *any part* in the way a decision is made[.]"  *Id.* at 1174 (emphasis added).

Back to us Babb's case came.  On remand, we (1) reversed and remanded on the Title VII gender-discrimination claim, as we had done the first go around, (2) reversed and remanded on Babb's age-discrimination claim, in accordance with the Supreme Court's decision, and (3) affirmed on the remaining issues that the Court hadn't directly addressed—including the Title VII retaliation claim and the hostile-

work-environment claim. *Babb v. Sec'y, Dep't of Veterans Affairs*, 802 F. App'x 548 (11th Cir. 2020) (per curiam).

Babb petitioned for rehearing on her Title VII retaliation and hostile-work-environment claims. She argued that the Supreme Court's decision fatally undermined our holding on her Title VII retaliation claim and that an intervening decision of this Court had the same effect on our treatment of her hostile-work-environment claim. We granted that petition, solicited supplemental briefs from the parties, and held oral argument.

## II

We first ask what the Supreme Court's decision in Babb's case means for her Title VII retaliation claim—which, in turn, requires us to ask whether the Court's decision undermined to the point of abrogation *Trask*'s Title VII holding, on which we earlier relied. Because the relevant provisions of the ADEA and Title VII are materially identical, we hold that the Supreme Court's analysis of the former controls the latter as well. Second, we ask what standard governs Babb's hostile-work-environment claim. We conclude, in accordance with our decision in *Monaghan*, that Babb's claim should be evaluated under the "might have

dissuaded a reasonable worker" standard, rather than the "severe or pervasive" standard that we applied on her first appeal.

### A

We divide our analysis of Babb's Title VII retaliation claim into two parts. First, we will determine whether the Supreme Court's decision in Babb's case, which construed a similar provision of the ADEA, is sufficiently on-point to free us of our allegiance to *Trask*. Second, we will consider the government's argument that Babb can't win even under the Supreme Court's more lenient standard.

### 1

In determining what the Supreme Court's decision portends for Babb's Title VII retaliation claim, we begin—as always—with the statutory text. Because Babb is employed by the VA, we look to Title VII's federal-sector provision.[2] It says, in relevant part, "All personnel actions affecting employees . . . in executive agencies

---

[2] A brief word about nomenclature. Throughout this opinion, we'll refer to the "federal-sector provisions" of both the ADEA and Title VII, *i.e.*, 29 U.S.C. § 633 and 42 U.S.C. § 2000e-16, and at times we do so in reference to subsection (a) of each provision because they both contain the critical statutory language common to the Supreme Court's decision in *Babb* and our decision here. We also note that because the text that is now codified (as amended) at 42 U.S.C. § 2000e-16(a) was enacted as § 717 of Title VII, some of the earlier cases refer to it as such. *See Porter v. Adams*, 639 F.2d 273, 274 (5th Cir. Unit A Mar. 1981).

. . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).[3]

In *Babb*, the Supreme Court considered the ADEA's nearly identical federal-sector provision, which states that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  As juxtaposing the two texts makes clear, where the ADEA's federal-sector provision commands that personnel actions "be made free from any discrimination based on" age, Title VII's federal-sector provision uses the exact same phrasing to bar discrimination based on other characteristics.

In *Babb*, the Supreme Court held that the "free from any discrimination" language means that personnel actions must be made in "a way that is not tainted by differential treatment based on" a protected characteristic.  140 S. Ct. at 1174.

---

[3] One might note that this provision of Title VII doesn't use the word "retaliation."  We'll have more to say on this later, but for present purposes we offer two observations.  First, *Babb* postdated the Court's determination that "discrimination," as used in 29 U.S.C. § 633a(a), includes retaliation.  *See Gomez-Perez v. Potter*, 553 U.S. 474, 488 (2008) ("[R]etaliation for complaining about age discrimination is 'discrimination based on age[.]'").  Second, the government doesn't dispute that retaliation claims brought under Title VII against federal agencies are cognizable under § 2000e-16(a), and, to the contrary, acknowledges that in light of *Gomez-Perez*, "the text of Section 2000e-16(a) would similarly prohibit retaliation based on protected activity such as filing or supporting complaints of discrimination under Title VII."  Supp. Br. of Appellee at 10–11.  Although some have already reached that conclusion, *see Komis v. Sec'y of United States Dep't of Labor*, 918 F.3d 289, 295 (3d Cir. 2019), the Supreme Court has only "assume[d] without deciding that it is unlawful for a federal agency to retaliate against a civil servant for complaining of discrimination," *Green v. Brennan*, 136 S. Ct. 1769, 1775 n.1 (2016).  *But see id.* at 1792 n.2 (Thomas, J., dissenting) ("Title VII does not provide federal employees with a cause of action for retaliation.").

In so holding, the Court initially examined each of § 633a(a)'s constituent terms.

First, the Court briefly defined "personnel actions."  Pointing to the Civil Service

Reform Act of 1978, the Court assumed that the term "personnel actions" in

§ 633a(a) included "most employment-related decisions, such as appointment,

promotion, work assignment, compensation, and performance reviews."  *Id*. (citing

5 U.S.C. § 2302(a)(2)).  Section 633a(a), the Court emphasized, commands that

such "personnel actions" "be made 'free from' discrimination."  *Id.*  As for "free

from," the Court took it to mean "'untainted' by."  For good measure, the Court

observed, Congress's placement of the word "any"—as in, "made free from *any*

discrimination"—reinforced the purity requirement.  *Id.*; *see also id.* n.2.  The term

"discrimination," the Court assumed, carries "its normal definition, which is

differential treatment."  *Id.* (quotation marks omitted).  Two terms remained.

"Based on" generally signifies "a but for-causal relationship."  *Id.* (quoting *Safeco*

*Ins. Co. of America v. Burr*, 551 U.S. 47, 63 (2007)).  Finally, "shall be made," the

Court explained, expresses "the imperative mood," and thereby emphasizes the

duty of making—that is, rendering or producing—personnel actions without "the

taint" of discrimination based on age.  *Id.*

Having dissected the statutory terms, the Court then explained the

relationship among them, giving special emphasis to two "matters of syntax."  *Id.*

First, it observed that the adjectival phrase "based on age" "modifies the noun

11

'discrimination,'" not "personnel actions." *Id.* "As a result, age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself." *Id.* The second syntactical matter involved the adverbial phrase "free from any discrimination." Because that phrase modifies the verb "made," it tells us "how a personnel action must be 'made.'" *Id.* Accordingly, "[i]f age discrimination plays any part in the way a decision is made," then that decision necessarily "is not made in a way that is untainted by such discrimination." *Id.* at 1174. Add it all up, and the takeaway is this: "[T]he statute does not require proof that an employment decision would have turned out differently if age had not been taken into account"—*i.e.*, does not require that age discrimination be the but-for cause of an adverse personnel decision. *Id.*

*Babb* "all but prewrote our decision today." *Allen v. Cooper*, 140 S. Ct. 994, 1007 (2020). Because the relevant statutory provisions of the ADEA and Title VII are essentially identical, the *Babb* Court's interpretation of the ADEA's phrase "personnel actions . . . shall be made free from any discrimination based on" must control here, too. We agree with Justice Thomas's observation in dissent in *Babb*: "Because § 633a(a)'s language also appears in the federal-sector provision of Title VII, 42 U.S.C. § 2000e–16(a), the Court's rule presumably applies to claims alleging discrimination based on sex, race, religion, color, and national origin as well." *Babb*, 140 S. Ct. at 1181 (Thomas, J., dissenting). Even as a general matter,

12

"when statutory language is obviously transplanted from . . . other legislation, we have reason to think it brings the old soil with it." *United States v. Davis*, 139 S. Ct. 2319, 2331 (2019) (quotation marks omitted). And here, in particular, we know that "[t]he ADEA federal-sector provision was patterned 'directly after' Title VII's federal-sector discrimination ban." *Gomez-Perez*, 553 U.S. at 487 (quoting *Lehman v. Nakshian*, 453 U.S. 156, 167 n.15 (1981)). Accordingly, the Supreme Court's understanding of the one's language necessarily guides our reading of the other's.[4]

As a matter of plain text, the government agrees: "Because the text of [the relevant provisions of Title VII and the ADEA are] materially identical, the government agrees that the Supreme Court's textual analysis of the causation standard in *Babb* should apply to federal-sector Title VII retaliation claims." Resp. to Pet. at 2; *see* Supp. Br. of Appellee at 10–12 (similar). Even so, the government insists that our decision in *Trask*, whose interpretation of the ADEA the Supreme Court abrogated, continues to control Babb's Title VII retaliation claim. So the

---

[4] That isn't to say that Title VII and the ADEA must always and everywhere be treated as one and the same. The Supreme Court has previously held that "textual differences between Title VII and the ADEA" foreclosed the extension of Title VII precedents to the ADEA context, for instance, and more generally warned that its "approach to interpreting the ADEA in light of Title VII has not been uniform." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009). It seems to us that some caution is particularly warranted when the interpretive vector runs the other way, *i.e.*, from the ADEA context to Title VII. But in this case, statutory text and context overwhelmingly counsel that we follow *Babb*'s interpretation of materially identical statutory language.

13

real question isn't about the right reading of the text.  Instead, it's about whether *Trask* still requires us to follow the wrong one.

It doesn't.  Because *Babb* undermined *Trask* "to the point of abrogation," *see United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008), *Trask* no longer binds this panel.  Recall that when Babb's case first came to us, we acknowledged that "[i]f we were writing on a clean slate, we might well [have] agree[d]" with her.  *Babb*, 743 F. App'x at 287.  But, we concluded, *Trask* bound us to reject her ADEA and Title VII retaliation claims.  *See id.* at 288 ("Under the prior-panel-precedent rule, *Trask* is binding on us.") (ADEA); *id*. at 290 ("Again, though, our earlier decision in *Trask* stands in Babb's way.") (Title VII retaliation).  The government says that's still true of the latter claim.

Having already done wrong once when we knew right, must we really do so again?  Yes, the government says, because the Supreme Court granted certiorari only on the ADEA question, so its holding was likewise limited.  And because the Supreme Court didn't overrule *Trask* insofar as it interpreted Title VII, the argument goes, the prior-panel-precedent rule compels us to continue to follow it still.  We disagree.

To start, the limits of the cert grant don't decide this issue.  The Supreme Court "has said again and again and again that [a cert] denial has no legal significance whatever bearing on the merits of the claim." *Ramos v. Louisiana*,

14

140 S. Ct. 1390, 1404 n.56 (2020) (quotation marks omitted); *see also United States v. Carver*, 260 U.S. 482, 490 (1923) ("The denial of a writ of certiorari imports no expression of opinion upon the merits of the case."). As the old Fifth Circuit explained, the denial of certiorari means only "that, for whatever reasons, there were not four members of the Court who wished to consider the issues presented for review." *Howell v. Jones*, 516 F.2d 53, 56 (5th Cir. 1975). And as it is with cases, so it must be with questions. *See* 16B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4004.3 (3d ed. 2020) ("Presumably the limited grant operates as a denial of review as to other questions, . . . and as any other denial imports no view on the merits of the issues denied review."). The Court's decision to grant cert on one question doesn't implicitly answer any others presented.

So, are we right back where we were when we last saw Babb's case? That's the government's position—now, as then, the prior-panel-precedent rule requires us to affirm. It's true, of course, that "even where it has been weakened, but not overruled, by a Supreme Court decision, prior panel precedent must be followed." *United States v. Fred Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997). That being said, if an earlier decision of ours flatly conflicts with an intervening decision of the Supreme Court, then our duty to vertical precedent trumps our duty to horizontal precedent. *See In re Provenzano*, 215 F.3d 1233, 1235 (11th Cir. 2000)

15

("We would, of course, not only be authorized but also required to depart from [our prior decision] if an intervening Supreme Court decision actually overruled or conflicted with it."). So it is here.

*United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008), is illustrative. That case spawned two decisions from this Court on the meaning of the term "crime of violence" in the Sentencing Guidelines and "violent felony" in the Armed Career Criminal Act. When the case first came before us, our existing precedent, *United States v. Gilbert*, 138 F.3d 1371 (11th Cir. 1998), required us to hold that Archer's offense—carrying a concealed weapon in violation of Florida law—counted as a "crime of violence" under the Guidelines. *United States v. Archer*, 243 F. App'x 564, 566 (11th Cir. 2007). Then, though, came the Supreme Court's decision in *Begay v. United States*, which held that a DUI isn't a "violent felony" under ACCA. 553 U.S. 137, 139 (2008). In *Begay*, the Court reasoned that while the violent felonies enumerated in the statute—*i.e.*, "burglary, arson, extortion, and crimes involving the use of explosives"—usually "involve[d] purposeful, violent, and aggressive conduct," DUIs didn't, and so a DUI couldn't be a "violent felony." *Id.* at 144–45. Not long thereafter, the Supreme Court granted cert in Archer's case, vacated our first decision, and remanded for reconsideration in light of *Begay*.

16

So, when Archer's case returned to us, we had to decide whether *Begay* had undone *Gilbert*. The second time around, the panel examined *Begay*'s rationale and found that *Gilbert* had been "undermined to the point of abrogation" because crime-of-violence caselaw and violent-felony caselaw ran on parallel tracks. *Archer*, 531 F.3d at 1352. ACCA's definition of "violent felony" and the Sentencing Guidelines' definition of "crime of violence," the panel noted, were "virtually identical." *Id.* (quotation marks omitted). Thus, *Begay*'s reasoning on the one was "clearly on point" for the other. *Id.* And applying that reasoning to the case before it, the panel concluded that "[c]arrying a concealed weapon"—like driving under the influence—didn't necessarily "involve the aggressive, violent conduct that the Supreme Court noted is inherent in the enumerated crimes," and as such, could no longer be treated as a "crime of violence" under the Guidelines. *Id.* at 1351. That doomed *Gilbert*'s contrary holding.

Just so here. In the same way that "violent felony" and "crime of violence" are functionally identical concepts, the two textual provisions here—one in the ADEA's federal-sector provision and one in Title VII's—are, as we have already explained, "[a]lmost exactly like" each other. *Babb*, 743 F. App'x at 290. The Supreme Court's decision in *Babb* explained that for the ADEA, the "plain meaning of the critical statutory language ('made free from any discrimination based on age') demands that personnel actions be untainted by any consideration

17

of age." 140 S. Ct. at 1171. Replace "age" with Title VII's set of protected characteristics, and everything else follows—plug and chug. And that displaces *Trask*'s holding that the federal-sector retaliation provision requires but-for causation.

In an effort to salvage *Trask*, the government comes close to suggesting that its unclear holding can't be "undermined to the point of abrogation" precisely because it's unclear. In particular, the government argues that because *Trask* doesn't *explicitly* locate Title VII's cause of action for retaliation in the federal-sector provision, we shouldn't assume that *Babb*'s logic and language are on-point. To that end, the government notes that in the past, some "appellate courts had held that retaliation claims were cognizable against federal employers under Title VII through the incorporation of remedies for violations of the private-sector [anti-retaliation] provision, Section 2000e-3(a)." Supp. Br. of Appellee at 9; *see also, e.g.*, *Ayon v. Sampson*, 547 F.2d 446, 449–50 (9th Cir. 1976); *Hale v. Marsh*, 808 F.2d 616, 619 (7th Cir. 1986). And, the argument goes, if the federal-sector's incorporation of certain remedial provisions concerning retaliation also incorporates § 2000e-3(a)'s protection from retaliation, then with § 2000e-3(a)'s protection comes its but-for causation standard. *Cf. Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for

cause of the alleged adverse action by the employer.").[5]  The government asserts

that because *Trask* relied on *Nassar*'s reading of § 2000e–3(a) in reaching its

holding on the causation standard for the retaliation claim it faced—one brought by

a federal employee—the question whether our holding stands post-*Babb* is "not

entirely free from doubt."  Supp. Br. of Appellee at 10.  If what we'll call the

government's "incorporationist" theory had been our own, we might share the

government's doubt.  But it hasn't, and so we don't.

This Court long ago construed § 2000e-16(a)'s prohibition of "any

discrimination" to directly "bar[] reprisals against federal employees who file

charges of discrimination."  *Porter v. Adams*, 639 F.2d 273, 277–78 (5th Cir. Unit

A Mar. 1981).[6]  That is, we held that "discrimination," as used in Title VII's

---

[5] To explain a bit more:  Section 2000e-3(a) is Title VII's private-sector anti-retaliation provision, and the "incorporationist" theory to which the government refers hinges on that provision—and its but-for causation standard—being read into § 2000e-16 through subsection (d).  Subsection (d), in turn, explains that civil actions arising under the federal-sector provision are governed by § 2000e-5(f)–(k), and *those* provisions address courts' remedial powers for things that include violations of § 2000e-3(a).  *See Ayon*, 547 F.2d at 449–50.  A related-but-distinct argument was noted by the Supreme Court in *Gomez-Perez*.  The Court explained there that while "the federal-sector provision of Title VII does not incorporate § 2000e–3(a), the federal-sector provision of Title VII does incorporate a remedial provision, § 2000e–5(g)(2)(A), that authorizes relief for a violation of § 2000e–3(a)."  553 U.S. 474, 488 n.4 (2008).  Although the Court noted that the petitioner in that case had argued that the scope of the remedial provision meant that the Court should infer a congressional intention to prohibit retaliation in § 2000e-16(a)'s bar on "discrimination," it didn't pass judgment on that argument, concluding only that the issue was "not before us in this case."  *Id.*

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that this Court is bound by the decisions of the former Fifth Circuit handed down by the close of business on September 30, 1981); *id.* at 1211 n.8 (explaining that "[a] decision of either administrative unit was binding on both units and became the law of the old Fifth"); *cf. Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) ("Unit A en banc decisions and Unit A

federal-sector provision, by its own terms includes retaliation. *See Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983). In much the same way that the *Gomez-Perez* Court held that "retaliation for complaining about age discrimination is 'discrimination based on age,'" 553 U.S. at 488, we held that retaliation for complaining about prohibited forms of discrimination is itself "discrimination" within the meaning of § 2000e-16(a), *see Porter*, 639 F.3d at 278. At least in this Circuit, then, the cause of action came not through incorporation of the concept of "retaliation" in § 2000e-3(a), but rather through interpretation of the word "discrimination" in 2000e-16(a).[7]

We recognize that (like many judicial opinions) *Trask* wasn't perfectly pellucid in its every jot and tittle. And we take the government's point that *Trask*'s references to Title VII's private-sector anti-retaliation provision and *Nassar* seem, at first blush, an awkward fit with a claim of retaliation brought under § 2000e-16(a). *See* 822 F.3d at 1194–96. That being said, *Trask* didn't purport to depart from our earlier decisions, and we're loathe to find conflict where reconciliation is

---

panel decisions *after* October 1, 1981, are only persuasive, however, not binding precedent in the Eleventh Circuit." (emphasis added)).

[7] Decisions from other circuits reflect this understanding of *Porter*. *See Baqir v. Principi*, 434 F.3d 733, 747 n.16 (4th Cir. 2006) (describing *Porter* as having "interpret[ed the] broad language of section 717 of Title VII to out-law reprisals" and contrasting that with the incorporationist approach); *Forman v. Small*, 271 F.3d 285, 297–98 (D.C. Cir. 2001) (relying on *Porter*'s reasoning to hold that the ADEA's federal-sector provision "by its *own* terms alone prohibits" retaliation for complaining of age discrimination because such retaliation "is age discrimination").

possible. *Cf. United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("A panel of this Court is obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule."). Moreover, and in any event, there's some reason to think that *Trask* implicitly relied on our earlier decisions. It was, after all, too late to have adopted the incorporationist approach—the old Fifth Circuit having already charted a different course—and sovereign immunity would have prevented the straightforward application of the private-sector anti-retaliation provision to the United States. *Cf. Gomez-Perez*, 553 U.S. at 491. Accordingly, we think that *Trask* is best read as having relied—per *Porter*—on a retaliation-based gloss on the word "discrimination" in § 2000e-16(a). And *Babb*'s analysis of the causation standard for "discrimination" claims brought under the ADEA's federal-sector provision stripped off *Trask*'s gloss on the same causation standard for retaliation claims brought under § 2000e-16(a).

\* \* \*

To sum up: The question is whether *Babb*'s analysis of the ADEA "undermined [*Trask*'s Title VII holding] to the point of abrogation." *Archer*, 531 F.3d at 1352. Because Congress chose to enact twin statutory provisions, the answer is yes.

21

## 2

As a fallback, the government says that whatever *Babb* might portend for another case, Babb still can't win this one.  On the government's theory, Babb's claim founders on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the VA's host of non-pretextual reasons for its adverse employment decisions.  And, says the government, Babb must show that her protected activity "was a but-for cause of some differential treatment that played a part in the decision made."  Supp. Br. of Appellee at 13.  Babb can't do that, the government asserts, because, as we held last time, she "has failed to demonstrate that the Secretary's proffered nondiscriminatory reasons for making each employment decision were pretextual."  *Babb*, 743 F. App'x at 291.  That was enough to sink Babb's case the first go-round and, the government says, it still is.

But it's not.  In the course of rejecting one of the government's arguments before it in *Babb*, the Supreme Court specifically explained that its ruling did "not mean that age must be a but-for cause of the ultimate outcome."  140 S. Ct. at 1174 n.3.  Rather, "[i]f, at the time when the decision is actually made, age *plays a part*, then the decision is not made 'free from' age discrimination."  *Id*. (emphasis added).  Indeed, the Court expressly clarified that "age must be the but-for cause of *differential treatment*, not that age must be a but-for cause of *the ultimate decision*."  *Id.* at 1174; *accord, e.g., id*. at 1171 ("The plain meaning of the critical

22

statutory language ('made free from any discrimination based on age') demands that personnel actions be untainted by any consideration of age.").  We can't square the government's backstop argument with the *Babb* Court's reasoning:

> Thus, "free from any discrimination" describes how a personnel action must be "made," namely, in a way that is not tainted by differential treatment based on age.  If age discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination.

*Id.* at 1173–74.

So, even when there are non-pretextual reasons for an adverse employment decision—as the government says there are here—the presence of those reasons doesn't cancel out the presence, and the taint, of discriminatory considerations.  *Cf. id.* at 1173 ("[A]ge must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself.").  Without quite saying as much, then, it seems that the Supreme Court accepted Babb's argument "that the District Court should not have used the *McDonnell Douglas* framework."  *Id.* at 1172.

One of the hypotheticals that the Supreme Court explored helps to show what this means in practice:

> Suppose that a decision-maker is trying to decide whether to promote employee A, who is 35 years old, or employee B, who is 55.  Under the employer's policy, candidates for promotion are first given numerical scores based on non-discriminatory factors.  Candidates over the age of 40 are then docked five points, and the employee with

23

the highest score is promoted.  Based on the non-discriminatory factors, employee A (the 35-year-old) is given a score of 90, and employee B (the 55-year-old) gets a score of 85.  But employee B is then docked 5 points because of age and thus ends up with a final score of 80.  The decision-maker looks at the candidates' final scores and, seeing that employee A has the higher score, promotes employee A.

*Babb*, 140 S. Ct. at 1174.

Now it's obvious that in this hypo, the differential treatment based on age made no difference to the outcome.  Even if employee B hadn't lost five points for being over 40, she still would have had the lower score.  So age wasn't a but-for cause of her losing out.  But no matter—age discrimination played *a role* in the decision-making because employee B was treated differently based on age when the employer docked five points from her total because she was 55.  Under § 633a(a)'s "free from any discrimination" standard, that's enough to hold the employer liable.  *Id.*

Because § 2000e-16(a)'s language is the same, so is the logic.  If a decision is not "made free from any discrimination based on" that which § 2000e-16(a) protects, then an employer may be held liable for that discrimination regardless of whether that discrimination shifted the ultimate outcome.  So long as the protected characteristic is "the but-for cause of *differential treatment*," then it doesn't matter

24

(for purposes of liability) that the protected characteristic isn't "a but-for cause of *the ultimate decision*." *Id.*[8]

\* \* \*

The Supreme Court's textual analysis of the ADEA's parallel provision controls our reading of Title VII here, and we must follow it rather than our prior decision in *Trask*. We therefore vacate the grant of summary judgment and remand for the district court to address Babb's Title VII retaliation claim under the proper standard.

**B**

Babb's second request—concerning her hostile-work-environment claim—also requires us to address the reach of Supreme Court precedent, as well as the intricacies of our own.

---

[8] A closing note—we emphasize, as the Supreme Court did, that the but-for causation of a given personnel action remains "important in determining the appropriate remedy." *Babb*, 140 S. Ct. at 1177. The relief that a party requests must redress the injury that the party alleges. *Id.* So, parties who can "demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision." *Id.* The law seeks to make injured parties whole—to do more is as much error as to do less. *See id.* at 1178. To match the relief given to the injury proven, a court considering a case in which a protected characteristic is the but-for cause of differential treatment in an employment decision but not a but-for cause of that ultimate decision should begin by considering "injunctive or other forward-looking relief." *Id.* Of course, like the Supreme Court, we recognize that "what relief, if any, is appropriate in the present case is a matter for the District Court to decide in the first instance . . . ." *Id.*

25

We begin at the beginning, with Babb's complaint—which, at least as it concerned the allegedly hostile work environment, was not a model of clarity. Everything about Babb's hostile-work-environment claim(s?) appeared in a single line of her complaint. Rather than distinguishing between a hostile-work-environment claim based on age and sex and another such claim based on retaliation, she just said that she was suing "for [a] hostile work environment based upon sex, age, and retaliation." Initially, that didn't seem like a very big deal, because the standards governing both kinds of hostile-work-environment claims appeared to be the same. But as a result of an intervening clarification of the law, we now know that's not true.

Back when the district court first faced this case, Babb's hybrid hostile-work-environment claim didn't raise any red flags. At that time, the case on which the district court relied—and the main case Babb argued on appeal—was *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012).

*Gowski* did a couple of things that matter for present purposes. First, it broke new ground in this Circuit by recognizing a "retaliatory hostile work environment claim." *Id.* at 1311–12. Notably, it recognized that cause of action without mentioning § 2000e-16(a), even though the claim there (like the one here) was brought by VA employees against the Secretary of the VA, *see id.* at 1304, and it principally relied on a First Circuit decision brought under the private-sector

26

anti-retaliation provision, *see id.* at 1312 (citing *Noviello v. City of Bos.*, 398 F.3d 76, 89–90 (1st Cir. 2005)).  Second, *Gowski* said that the standard for evaluating such claims was the same as for the other hostile-work-environment claims—*i.e.*, whether a reasonable jury could find that "the actions complained of were sufficiently severe or pervasive to alter the terms and conditions of employment, thus constituting an adverse employment action."  *Id.* at 1312.  So, post-*Gowski*, whatever the stripe of hostile-work-environment claim, the severe-or-pervasive standard governed.  Or so everyone thought.

The district court in this case determined that Babb's claim, however construed, fell short of the severe-or-pervasive threshold.  The court explained that the *Gowski* standard applied to both a claim alleging a "hostile work environment based on age or gender" and a "retaliatory hostile work environment claim," and it adjudicated—and rejected—both claims (or possible versions thereof) under that standard.  *Babb*, 2016 WL 4441652 at *16.  What Babb complained about, the court held, was no more than "the ordinary tribulations of the workplace" and that simply didn't constitute actionable harassment.  *Id*. at *17.

On appeal, Babb likewise argued everything in *Gowski* terms—she accepted the severe-or-pervasive standard and just disputed the district court's determination that she didn't meet it.  You make a *Gowski* argument, and you're liable to end up with a *Gowski* holding.

27

Babb did—and we affirmed the district court's rejection of Babb's claim under *Gowski*'s severe-or-pervasive standard. *Babb*, 743 F. App'x at 292. Following remand from the Supreme Court, we did the same thing for the same reason. *Babb v. Sec'y, Dep't of Veterans Affairs*, 802 F. App'x 548, 548 (11th Cir. 2020).

But here's the wrinkle. Just weeks before we issued our (now-vacated) order on remand, this Court decided *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020)—which, as we will explain, effectively overruled *Gowski* insofar as it applied to retaliatory-hostile-work-environment claims. To understand exactly what *Monaghan* did to *Gowski*—and how—it helps to start with *Monaghan*'s theoretical framework.

First, the *Monaghan* Court took pains to separate out the various sorts of claims involved in Title VII litigation. The Court assigned archetypal Title VII claims the following names and definitions:

    (1)    The disparate-treatment claim, *i.e.*, "a claim that an employee has suffered a tangible employment action based on race or other prohibited characteristics."

    (2)    The hostile-environment claim, *i.e.*, a claim stemming from mistreatment based on a protected characteristic that "is 'sufficiently severe or pervasive' that it can be said to alter the terms, conditions, or privileges of employment."

    (3)    The retaliation claim, *i.e.*, a claim stemming from "retaliation for protected conduct" where the mistreatment "well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Id.* at 860–62.

The first two, the *Monaghan* Court explained, arise—at least in a private-sector case—under 42 U.S.C. § 2000e-2(a)(1), Title VII's private-sector anti-discrimination provision. *Id.* at 860–61. The third, however, emanates from § 2000e-3(a), Title VII's private-sector anti-retaliation provision. *Id.* at 861.

Having established that framework, the *Monaghan* Court explained how *Gowski* mixed things up. Because "retaliatory-hostile-environment claims" were really Type 3 claims—*i.e.*, retaliation claims under § 2000e-3(a))—rather than Type 2 claims—*i.e.*, "hostile-environment" claims under § 2000e-2(a)(1)— § 2000e-2(a)(1)'s severe-or-pervasive standard shouldn't have been applied to the Type 3 claims in *Gowski*. *Id.* at 862. That mismatch, *Monaghan* said, made *Gowski* an "outlier." *Id.* Worse, the *Monaghan* Court observed, *Gowski* had ignored binding decisions from both the Supreme Court and this Court— *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), and *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). According to the *Monaghan* Court, those decisions used a different, less onerous standard from *Gowski*'s. They asked whether the employer's complained-of action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974 (quoting *Burlington Northern*, 548 U.S. at 68). Facing

inconsistent Eleventh Circuit precedent, the *Monaghan* Court held that *Crawford* trumped *Gowski* because it came first. 955 F.3d at 862.

On rehearing here, Babb challenges our earlier reliance on *Gowski*. And she asks that the *Gowski*-based summary judgment be vacated so that the district court can reconsider her claim under the proper standard. We agree, and we will do just that—but before doing so, we must address the government's various counterarguments.

The government leads with forfeiture. In short, the government says that because Babb didn't split her hostile-work-environment claims up and didn't argue *Burlington Northern* or *Crawford* the first time around, she should be barred from doing so now. Granted, this Court has a "long-standing prudential rule of declining to entertain issues not raised in an appellant's initial brief on appeal but raised for the first time in a petition for rehearing." *United States v. Levy*, 416 F.3d 1273, 1275 (11th Cir. 2005). But of course, at the time Babb filed her initial brief on appeal, *Monaghan* hadn't been decided, and *Gowski* would have led most to conclude that any argument along these lines would be fruitless, if not downright frivolous. That, combined with the other circumstances here—that the case has been to the Supreme Court and back, that *Monaghan* came out right before we issued our order on remand, that the parties have briefed the issue twice and since

30

participated in oral argument—leads us to conclude that it's prudent to consider this issue.[9]

Next, the government seeks to narrow *Monaghan*. In particular, it argues that *Monaghan*'s holding is limited to "private-sector Title VII retaliatory hostile work environment claims" and has no bearing on "cases . . . arising under the federal-sector Title VII provision" and, accordingly, that "*Gowski* . . . remains binding under the prior-panel-precedent rule." Supp. Br. of Appellee at 8, 20. The government is right to point out (as we have acknowledged) that *Monaghan* involved a private employer and *Gowski* a federal employer. But in repudiating the analysis of *Gowski*—again, a case, like this one, about VA employees suing the Secretary—the *Monaghan* Court "reaffirm[ed] that the standard applicable to *all* Title VII retaliation claims is the *Burlington Northern* 'well might have dissuaded' standard, precisely as our pre-*Gowski* opinion in *Crawford* said." 955 F.3d at 862 (emphasis added). We presume that when the *Monaghan* Court said "all," it meant "all." To be sure, we have observed that for "law-of-the-circuit purposes . . . the review of any precedent ought to focus far more *on the judicial decision than on the judicial opinion*." *Jones v. White*, 992 F.2d 1548, 1566 (11th Cir. 1993)

---

[9] It's also not obvious that the issue of the correct standard was indeed forfeited, or even that it *can* be forfeited. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018) ("[P]arties cannot waive the application of the correct law.").

(brackets and quotation marks omitted). But in *Monaghan*, *Gowski*'s continuing vitality was front and center. *See* 955 F.3d at 857. The *Monaghan* Court examined *Gowski* at length and in detail—and concluded that it was wrong *ab initio*. *Id.* at 862. We see no fair reading of *Monaghan* that leaves *Gowski*'s severe-or-pervasive holding intact. What's more, *Monaghan*'s law-of-the-circuit holding—*i.e.*, that *Crawford* trumps *Gowski* because "when there are conflicting prior panel decisions, the oldest one controls"—separately precludes us from concluding to the contrary. *Monaghan*, 955 F.3d at 862; *see United States v. Tellis*, 748 F.3d 1305, 1309–10 (11th Cir. 2014) (rejecting an argument that Circuit precedent had been undermined to the point of abrogation because the Court had already concluded otherwise); *cf. Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (noting that "the determination whether a given precedent has been abrogated is itself a determination subject to the [prior-panel-precedent rule]").[10]

The government separately argues that the severe-or-pervasive standard is effectively part and parcel of the federal-sector's limited waiver of sovereign

---

[10] The parties also dispute whether and to what extent certain deference doctrines may be in play. Babb argues that the government's theory flies in the face of the EEOC's own interpretation of the relevant standard, which Babb contended in a 28(j) letter is due *Chevron* deference. The government says that because Babb argued for mere *Skidmore* deference in her opening brief, she forfeited the *Chevron* argument. Whether, when, and by whom *Chevron* can be waived or forfeited raises a slew of questions. *Compare Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 22 (D.C. Cir.), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019) ("[I]nsofar as *Chevron* concerns the meaning of a statute, it is an awkward conceptual fit for the doctrines of forfeiture and waiver."), *with Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790 (2020) (Statement of Gorsuch, J., respecting the denial of

32

immunity—that because any retaliatory hostile work environment must "rise to the level of a 'personnel action" to pass muster under 42 U.S.C. § 2000e-16(a), it follows that only conduct "sufficiently severe or pervasive to constitute a 'significant change in . . . working conditions'" qualifies. Resp. to Pet. at 16 (quoting 5 U.S.C. § 2302(a)(2)(A)(xii)); *see also* Supp. Br. of Appellee at 20. Babb grants the "personnel action" limitation but disputes the revivification of the severe-or-pervasive standard. That standard, she argues, comes from specific language in § 2000e-2(a), *see Monaghan*, 955 F.3d at 862, and thus doesn't govern claims like this one since the federal-sector provision lacks that language. On this much, we agree with Babb. The text of the federal-sector provision addresses "personnel actions," and so it seems clear enough that an actionable retaliatory-hostile-work-environment claim must describe conduct that rises to that level. But we see no basis in that text for the government's proposed severe-or-pervasive

---

certiorari) (stating that "the government expressly waived reliance on *Chevron*" in that case and that the Supreme Court "has often declined to apply *Chevron* deference when the government fails to invoke it"). But our decision here is compelled by what we have said in *Monaghan* and *Crawford*, and, as that apparently aligns with the EEOC's interpretation of this statute, we leave these questions for another day.

standard.  And, for reasons already explained, to whatever extent that *Gowski* grafted such a standard on, we think *Monaghan* sheared it off.[11]

Finally, the government suggests that remand is futile because what Babb has complained of can't pass muster even under the *Burlington Northern-Crawford-Monaghan* standard.  We recognize that the district court has already characterized what Babb endured as "the ordinary tribulations of the workplace," and that the Supreme Court has long said that Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington Northern*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Even so, given *Gowski*'s demise, we think it best for the district court to have the chance to evaluate Babb's claim under the proper standard.

*   *   *

The first time around, we followed *Gowski*.  *Monaghan* said that was a misstep.  So today we follow *Crawford*.  The district court should do the same on remand.

## III

In conclusion, we vacate the grant of summary judgment on Babb's Title VII retaliation claim and her retaliatory-hostile-work-environment claim.  We remand for the district court to reconsider these claims under the proper standards.  On

---

[11] We note that the government doesn't contest the existence of a cause of action for this kind of retaliatory-hostile-work-environment claim.

remand, the district court should follow *Babb* on the first issue and *Crawford* on the second.

**VACATED and REMANDED.**