**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-10894

Non-Argument Calendar

————————————————

DAVID E. JACKSON,

*Plaintiff-Appellant,*

*versus*

SECRETARY, U.S. DEPARTMENT OF TRANSPORTATION,

Federal Aviation Administration, Washington, DC,

*Defendant-Appellee.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-03738-AT

————————————————

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

The Federal Aviation Administration operates "hundreds of air traffic control facilities staffed by a highly trained, highly skilled

workforce and thousands of air routes that safely carry" millions of passengers across tens of thousands of flights each day.[1]  To ensure that its air traffic controllers stay sharp and up to date, the FAA mandates periodic on-the-job training.

An Airway Transportation System Specialist at the FAA, David Jackson faced a two-week suspension after he failed to timely complete his training.  Asserting that this rationale was pretext for discrimination, he sued his employer under Title VII and the Age Discrimination in Employment Act.  But all evidence in the record suggests that Jackson faced discipline for his tardiness—not his race, age, or any protected activity.  Because no reasonable jury would conclude otherwise, we affirm the district court's grant of summary judgment in the employer's favor.[2]

## I.

Much of the following account comes from the employer's statement of material facts.  The district court properly deemed those facts admitted because Jackson did not respond with specific and clear citations to the record, as Local Rule 56.1(B)(2)(a)(2) requires.    Rather, his response came with citations to "unidentifiable documents," referring to any one of the "373 pages of exhibits that were not labeled or in any logical order and were totally out-of-sequence."  We have said that compliance with Local

---

[1] Fed. Aviation Admin., *Safety: In the Air*, https://www.faa.gov/safety/air [https://perma.cc/9RR7-32E4] (last updated Sept. 10, 2025).

[2] We deny all pending motions as moot.

25-10894                 Opinion of the Court                 3

Rule 56.1 is "the only permissible way" for the nonmovant "to establish a genuine issue of material fact" at the summary judgment stage. *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). "In the absence of such specific citations to evidence, the court will deem each of the movant's facts as admitted." *Id.* at 1267 (quotation omitted). With that, we turn to the admitted facts.

For over three decades, Jackson has worked for the FAA's Atlanta Air Route Traffic Control Center. Under FAA policy, specialists like Jackson must complete on-the-job training to obtain "direct experience in the work environment where the employee is required to perform his/her duties." First-level managers must "establish employees' training schedules" and ensure that training is "accomplished in a timely manner." Though employees must generally complete assigned trainings within 180 days, managers have discretion to impose shorter deadlines.

In July 2015, Jackson's manager Tina Cadrette assigned training related to the FAA's Wide Area Augmentation System— "an extremely accurate navigation system" that "provides service for all classes of aircraft in all phases of flight."[3] This training takes about ten hours: five with instructor Frank Bradley and another five for self-study. Cadrette initially directed Jackson to complete the training by late August. But seeing that Jackson might need

---

[3] Fed. Aviation Admin., *Satellite Navigation – Wide Area Augmentation System*, https://www.faa.gov/about/office_org/headquarters_offices/ato/service_units/techops/navservices/gnss/waas    [https://perma.cc/XC4M-RGMH] (last updated Dec. 9, 2025).

more time, Cadrette agreed to a one-month extension. Leading up to the new deadline, she reached out—multiple times—to remind Jackson about the training, even offering to take work off his plate so he could get it done. But one day before the deadline, Jackson told Cadrette that he would not complete the training on time.

Cadrette then scheduled a meeting with Jackson to discuss next steps. Jackson claimed that he had, in fact, timely completed the training. But when Cadrette asked instructor Frank Bradley about Jackson's story, Bradley responded that Jackson had not participated in any instructional sessions. After consulting her manager and a human resources specialist, Cadrette admonished Jackson and suspended him for two weeks.

Jackson says that he was suspended not because he failed to comply with training protocols, but because he is black and over forty years old. So he filed this lawsuit, alleging that his employer engaged in disparate treatment and retaliation in violation of the federal sector provisions of Title VII and the ADEA. *See* 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a(a). After a year of discovery, the district court granted the employer's motion for summary judgment. This is Jackson's appeal.

**II.**

We review de novo the district court's grant of summary judgment. *See McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024). A movant is entitled to summary judgment if he can show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting

Fed. R. Civ. P. 56(a)).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* (quotation omitted).

## III.

We agree with the district court that there is not enough evidence for a reasonable jury to conclude that discrimination or retaliation played any role in his suspension.

## A.

The federal sector provisions of Title VII and the ADEA are "essentially identical."  *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1199–1200 (11th Cir. 2021).  Both provide that "[a]ll personnel actions affecting employees" "shall be made free from any discrimination based on" some protected characteristic—whether "race, color, religion, sex, or national origin" (in the case of Title VII) or "age" (the ADEA).  *See* 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a(a).  To prevail under either statute, the plaintiff must show that a discriminatory reason played some part in the decision-making process, such that it is not "untainted" by discrimination. *Babb*, 992 F.3d at 1204 (quotation omitted); *see Buckley v. Sec'y of Army*, 97 F.4th 784, 793 (11th Cir. 2024).

In employment discrimination cases, a wide variety of circumstantial evidence may be used to defeat a motion for summary judgment—so long as the evidence is admissible and "would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) (quotation omitted).  Here, Jackson rests his

disparate treatment claims on evidence that, in his view, reflects favorable treatment for employees who are neither black nor over the age of forty. To be clear, comparator evidence is not the be-all and end-all in employment discrimination cases: a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *see Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 997 (11th Cir. 2025). But Jackson does not rely on other circumstantial evidence of discrimination, such as "suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred." *Tynes*, 88 F.4th at 946 n.2 (quotation omitted). Given Jackson's decision to frame his case in this way, we will consider whether his comparator evidence suffices to stave off summary judgment.

For comparator evidence to support an inference of discriminatory intent, the plaintiff and his comparators must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224–25 (11th Cir. 2019) (en banc). As relevant here, a similarly situated comparator "will have been subject to the same employment policy, guideline, or rule" and "will have engaged in the same basic conduct (or misconduct) as the plaintiff." *Id.* at 1227.

Jackson points to two colleagues who also worked for Cadrette—Daniel Wheaton and Rey De Los Santos. But Wheaton and Los Santos are "differently situated in material respects": Jackson did not point the district court to any evidence that they

failed to meet any supervisor-imposed deadlines or were untruthful in the course of any investigation.[4]  *See id.* at 1228 (internal quotation marks omitted).  Since they did not engage in the same basic misconduct as Jackson, there is no reason to think that they received favorable treatment by dint of their race or age— or put differently, that Jackson's suspension had anything to do with *his* race or age.  *See Anthony v. Georgia*, 69 F.4th 796, 805–06 (11th Cir. 2023).  Nothing in the record suggests that had Wheaton and Los Santos failed to meet Cadrette's deadlines and then tried to hide it, they would have been treated any differently than Jackson.[5] Jackson's comparator evidence therefore rests on an improper comparison.  And without any evidence supporting an inference of discriminatory animus, Jackson's disparate treatment claims fail.

**B.**

Next, Jackson claims that Cadrette retaliated against him for his December 2014 internal grievance complaining that Cadrette held him "responsible for the completion of work that has been assigned to other employees" and created "hostility and confusion

---

[4] Relying on a document that appears to reflect Wheaton's on-the-job training history, Jackson contends that Wheaton took more than two years to complete a particular course.  But Jackson did not clearly cite this (or any other) document in his response to the employer's statement of material facts, in violation of Local Rule 56.1(B)(2)(a)(2).  Jackson cannot cure a defective response by including the missing citations in his appellate briefs.

[5] Jackson's summary judgment filings did not point the district court to any evidence indicating that Wheaton and Los Santos faced more lenient deadlines on account of their race or age.

within the unit" by "routinely" changing "[m]anagement expectations and directions."

To prove retaliation under Title VII, the plaintiff must establish that he had "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (quotation omitted). "Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII." *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

Jackson's December 2014 grievance did not complain of racial discrimination of any kind. In fact, Jackson concedes that his grievance complained about Cadrette's attempts to hold him "accountable for work not performed when that work had been assigned to two other employees." Because the grievance does not qualify as "statutorily protected activity," no reasonable jury would find in Jackson's favor on his Title VII retaliation claims.[6] *Furcron*, 843 F.3d at 1310.

⋆        ⋆        ⋆

We **AFFIRM**.

---

[6] Jackson did not press retaliation claims under the ADEA.