[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12527
Non-Argument Calendar

_____

D.C. Docket No. 5:18-cv-00126-TKW-MJF

THOMAS EDWARD MALONE, JR.,

Plaintiff - Appellant,

versus

U.S. ATTORNEY GENERAL,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 26, 2021)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Thomas Malone, Jr., a white man, appeals the district court's grant of summary judgment to his employer, the Bureau of Prisons ("BOP"), on Malone's employment discrimination claims. Malone alleged discrimination based on disability in violation of the Rehabilitation Act, and race discrimination and unlawful retaliation in violation of Title VII. After careful consideration, we affirm.

## I.    FACTUAL BACKGROUND

Malone has worked for BOP as a lieutenant (at the GS-11 salary level) at the Marianna Federal Correctional Institution ("FCI") in Florida since 2004. Malone has neither attended college nor completed any post-secondary schooling. Malone gained some experience working in a maximum-security facility temporarily and was eventually assigned to the Special Housing Unit ("SHU") in a different facility, where inmates stayed before trial. However, he was never employed full time in a maximum-security prison.

In 2013, Malone completed training as a Disciplinary Hearing Officer ("DHO"). DHOs, a position at the GS-12 salary level, address inmate disciplinary issues in BOP facilities. Full-time DHOs are selected by the regional office that oversees a given set of BOP facilities. But some facilities also employ alternate DHOs who assist with the disciplinary case load as a "collateral duty," meaning that alternate DHOs continue to fulfill their primary job.

2

A. Applications for DHO Positions

Since 2013, Malone has served as an alternate DHO, but he has applied for full-time DHO positions across the country.  Helen Marberry was the regional director of the BOP's southeast region and was charged with selecting DHOs for facilities within that region at all relevant times.

Typically, hundreds of people apply for any given DHO posting. Applications are first scored by BOP's human resources office in Texas, who then generate a best-qualified list that they send to the regional office.  [When Marberry had to select DHO candidates, she would ask the Disciplinary Hearing Administrator ("DHA"), a role fulfilled by James Moran at the time, to provide a recommendation first.  In addition to the DHA's recommendation, Marberry considered whether the candidates were "well rounded," including their educational background.

Malone complains about three DHO job announcements.  First, an announcement for a DHO vacancy in Atlanta, Georgia, for which Deneen Orr, a black woman, was selected.  Marberry testified that she valued Orr's experience working at FCI Talladega on their special management unit ("SMU") for inmates who require "a higher degree of supervision."  Orr had also worked in the SHU at FCI Talladega and has a college degree.

3

Second, Malone points to a DHO vacancy announced in 2016, for which Marberry selected Willie Davis, Victor Santana, and Sheryl Sawyer. Davis, a black man, had served a variety of roles before being promoted to a DHO: a corrections officer, a clerk, a counselor, and a case manager. Santana, a Hispanic man, is fluent in English and Spanish, and has an associate's degree. Moran also recommended Santana for the position, citing his Spanish language fluency and experience working at MDC Guaynabo. Marberry also recalled working with Santana personally. Sawyer, a black woman, was a lateral hire.

Third, Marberry selected William Epps for another DHO vacancy announcement made in 2016. Epps, a black man, had previously worked at FCI Talladega as a lieutenant, and had experience working in both the SMU and SHU. He also served as an alternate DHO and had completed some college coursework. Moran also recommended that Marberry hire Epps because he had worked with Epps personally and admired his work ethic.

In connection with this third application, Malone's supervisor, Captain Shawn Pryor, provided a reference check in which he rated Malone as "average" in most areas and "above average" in technical expertise. Pryor advised that he would hire Malone in the position he applied for.

After failing to secure any of these DHO positions, Malone spoke with the Equal Employment Opportunity Office ("EEO"). He filed a complaint with the

Equal Employment Opportunity Commission ("EEOC") on May 12, 2016.  In an

affidavit filed in response to the government's summary judgment motion, Malone

said that EEO counselors normally contact supervisors after a verbal complaint to

notify them of a pending action without providing details on the complaint.

B.  Removal from SHU, Counseling Letter, and Shift Request

Malone was removed as SHU Lieutenant on May 9, 2016, after he failed to

follow the Warden's orders about implementing FCI Marianna's clothing policy

for inmates.

In August 2016, Malone received a formal counseling letter after failing to

complete a required form after an inmate died.  Formal counseling letters are not

considered a form of discipline, but instead are meant to "improve performance."

In January 2017, Pryor denied Malone a shift assignment request.

Employees can request shifts, but they are assigned based on institutional need.

C.  Disabilities

Malone received a performance evaluation on April 12, 2017, covering his

performance from April 2016 to March 2017.  Malone received an overall rating of

"Achieved Results," based on whether he met various performance measures.  The

evaluation reflected Malone's improvement in some areas, but noted others that

needed further improvement.  For example, Malone had not completed report

incidents forms on time on two occasions and he monitored, on average, only 4.14

calls per shift whereas he was required to monitor a minimum of ten inmate calls per shift.

Malone suffers from post-traumatic stress disorder and post-exertional malaise as a result of his military service. He first made a written reasonable accommodation request related to those disabilities on April 17, 2017. Malone testified that this written request was the first time he informed his supervisors of his disabilities, as he did not like discussing his conditions or his military service. But in an affidavit submitted in opposition to the government's summary judgment motion, Malone claimed he verbally informed his supervisors of his disabilities in February 2017. Malone did not specify which supervisor(s) he told or what date in February he allegedly told them.

## II.    PROCEDURAL BACKGROUND

Malone filed suit in 2018, raising a number of claims of discrimination. On the government's motion, the district court dismissed several of Malone's claims, but allowed a claim based on disparate treatment due to disability, a claim of racial discrimination based on failure to promote, a racially hostile work environment claim, and two retaliation claims to move forward. The district court determined that Malone had failed to exhaust the dismissed race discrimination and reasonable accommodation claims because he had not addressed them in his EEOC complaint.

In April 2020, following discovery, the district court granted the government's

motion for summary judgment on the remaining claims.  This is Malone's appeal.

## III.    ANALYSIS

This Court reviews de novo a grant of summary judgment.  Chapman v. AI

Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  We view the evidence

and draw all reasonable inferences in favor of the party opposing summary

judgment.  Id.  Summary judgment is appropriate if the movant "shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).

Malone says that the district court erred in granting summary judgment to

the government on his claims that he (1) was discriminated against on the basis of

the disabilities he suffers as a result of his military service; (2) should have been

promoted over black and Hispanic candidates for DHO vacancies; (3) was subject

to a racially hostile work environment due to being white; and (4) was retaliated

against when he complained about this alleged discrimination.  We examine each

in turn.

### A. Malone Did Not Establish a Disparate Treatment Claim Based on Disability

Malone brings his disability discrimination claim under the Rehabilitation

Act.  In order to make out a prima facie Rehabilitation Act claim in the absence of

direct evidence, a plaintiff must show that (1) he has a disability; (2) he is a

7

qualified individual; and (3) he was subject to unlawful discrimination as a result of the disability.  Center v. Sec'y, Dep't of Homeland Sec., Customs & Border Prot. Agency, 895 F.3d 1295, 1303 (11th Cir. 2018).  Malone says that his supervisors gave him an unfavorable performance evaluation after they learned he suffered from post-traumatic stress disorder and post-exertional malaise.[1]

The problem for Malone is that the performance evaluation he complains about occurred before his supervisors learned of these disabilities.  The record reflects that Malone first made a request for a reasonable accommodation based on these disabilities on April 17, 2017.  The performance evaluation occurred on April 12, 2017.

Malone says that he verbally informed his supervisors of his disabilities in February 2017.  But, on this topic, this record contains only an affidavit that Malone submitted along with his response to the government's summary judgment motion.  The district court excluded the affidavit on the basis that it was self-serving and conflicted with Malone's deposition testimony.  We review a district

---

[1] Malone also claims that he suffered adverse employment actions when his accommodation request was denied and alleges a hostile work environment based on his disability.  But the district court dismissed those counts from his complaint and Malone never challenged the district court's finding that those claims were unexhausted.  For that reason, we address only the argument that the adverse performance evaluation was the result of unlawful disability discrimination.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge on that ground[.]").

court's decision to exclude an affidavit on this basis for abuse of discretion.

Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1306 (11th Cir. 2016).  A district

court abuses its discretion when its "ruling rests upon a clearly erroneous finding

of fact, an errant conclusion of law, or an improper application of law to fact." Id.

(quotation marks omitted).

When he was deposed, Malone said he first informed BOP about his

disabilities when he "requested reasonable accommodation."  He stated he could

not recall when he made a reasonable accommodation request "without looking at

the paper."  The written reasonable accommodation request was made on April 12,

2017.  He did not mention orally informing his supervisors prior to making the

written request.  In fact, he stated that he never discussed his disability with his

supervisor because he does not discuss his PTSD or his military service.  It was

only in an affidavit, submitted with his response in opposition to the motion for

summary judgment, that Malone first stated that he had told his supervisors about

his disabilities in February 2017.  In the affidavit, Malone does not specify which

day in February he told his supervisors about his disability, nor does he specify

whom he told.

"When a party has given clear answers to unambiguous questions which

negate the existence of any genuine issue of material fact, that party cannot

thereafter create such an issue with an affidavit that merely contradicts, without

explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). Malone's affidavit, submitted only after the government pointed out the chronology problem with Malone's claim of discrimination, contradicts his testimony about when he informed his supervisors about his disability. He clearly stated that he did not discuss his disability with his supervisors until he submitted the reasonable accommodation request on April 17, 2017. The district court did not abuse its discretion in disregarding the affidavit. See Furcron, 843 F.3d at 1306.

Absent the disregarded affidavit, there is no evidence to support Malone's claim that his supervisors knew about his disabilities before he received the April 12, 2017, performance review. We therefore affirm the district court's grant of summary judgment to the government on Malone's disability discrimination claim.

B. Malone Did Not Establish a Claim for Race Discrimination

Malone claimed that he suffered race discrimination when Marberry promoted a black woman, two black men, and one Hispanic man to fulltime DHO positions to which Malone also applied. We begin by noting that the district court evaluated this claim using a framework that we have since clarified does not apply to race discrimination claims brought by federal employees under 42 U.S.C. § 2000e-16(a). Babb v. Sec'y, Dep't of Veterans Affairs, 992 F.3d 1193, 1204–05 (11th Cir. 2021). Previously, federal employees had to show that the

10

discrimination was the but-for cause of the adverse employment action. See id. at 1204. One way plaintiffs could make that showing, and the way Malone attempted to before the district court, was through the McDonnell Douglas framework. Under that framework, the plaintiff makes out a prima facie case of discrimination by showing that he: (1) was a member of a protected class; (2) his employer subjected him to an adverse employment action; (3) he was qualified to do the job; and (4) his employer treated him less favorably than similarly situated individuals outside his protected class. Lewis v. City of Union City, 934 F.3d 1169, 1185 (11th Cir. 2019). Once the plaintiff makes out a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc). At that point, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." Id.

But the text of Title VII states that employment decisions affecting federal employees must "be made free from any discrimination based on race," 42 U.S.C. § 2000e-16(a) (emphasis added). After the Supreme Court decided that the phrase "free from any discrimination" in the Age Discrimination in Employment Act did not require plaintiffs to show that discrimination was the but-for cause of an adverse employment decision, this Court held that the same reasoning applied to the identical text in 42 U.S.C. § 2000e-16(a). Babb, 992 F.3d at 1205. This means

11

that the McDonnell Douglas framework no longer applies to claims brought under 42 U.S.C. § 2000e-16(a).  Specifically, the fact that there may be non-pretextual reasons for an adverse employment action "doesn't cancel out the presence, and the taint, of discriminatory reasons." Id. at 1204.  Instead, the plaintiff need only show that race played a part in the way the decision was made, because an employment decision must be "untainted by . . . discrimination." Id. at 1199 (quotation marks omitted).

But even using this standard, Malone's argument fails because he has not shown that his race was the but-for cause of any differential treatment. Id.  Malone offers no direct evidence that race played a role in BOP's decision to promote black women, Orr and Sawyer, black men, Epps and Davis, or a Hispanic man, Santana, to full-time DHO positions.  Instead, Malone says that differential treatment can be inferred by the fact that he was more qualified than these candidates.  But that contention is not supported by the record.  For example, he said that Orr never worked at FCI Talladega's SMU, but the record reflects that she did in fact work there.  Orr also has a college degree and had significant experience working in the SMU; Malone has neither.  Sawyer was already a fulltime DHO when she was hired.  Davis served in a variety of roles before being promoted to a DHO, whereas Malone's experience was limited to correctional services.  Santana was fluently bilingual and has an associate's degree.  Indeed, Malone appears to

12

concede that at least Sawyer and Santana were more qualified than he was. Epps completed some college coursework, had experience working in the SMU, and Moran had previously worked personally with Epps (and not Malone) and recommended Epps to Mayberry based on this experience.

Malone need not have shown that being white was the but-for cause of BOP's decision to promote non-white candidates instead of him. But he does still need to show that the decision was in some way tainted by race discrimination.. Babb, 992 F.3d at 1199 (quotation marks omitted). Malone cannot point to any record evidence that his application for DHO was treated differently because he is white. Therefore, we affirm the district court's grant of summary judgment to BOP on Malone's race discrimination claim.

C. Malone Did Not Show that He Suffered a Hostile Work Environment Due to His Race

Malone says he was subject to a racially hostile work environment when his supervisors, and especially Captain Pryor, assigned him additional work, subjected him to discipline after he failed to file a required form after an inmate's death, and verbally abused him by "nitpicking every task" he completed and "harassing" him for filing an evaluation late. Malone's evidence that this treatment was due to his race is the fact that it occurred after he filed his EEOC complaint, in which he alleged race discrimination. After Malone filed his complaint, he says Pryor "substantially downgraded" his performance evaluation.

13

An employer is responsible for a racially hostile work environment, and therefore violates Title VII, when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Fernandez v. Trees, Inc., 961 F.3d 1148, 1152 (11th Cir. 2020) (quotation marks omitted).  A plaintiff makes out a prima facie case for a hostile-work-environment claim when he establishes that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) a basis exists for holding the employer liable.  See id. at 1153.

But "not all objectionable conduct or language amounts to discrimination under Title VII." Jones v. UPS Ground Freight, 683 F.3d 1283, 1297 (11th Cir. 2012) (quotation marks omitted).  And the complained of behavior must result in "an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (quotation marks omitted and alterations adopted).  In determining whether the conduct was objectively severe, we consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or

14

a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

Malone has shown neither that the environment was hostile to the point that it altered the terms of his employment, nor that any mistreatment he suffered was due to the fact that he is white. First, Malone testified that his only subjective experience of racial discrimination was when Marberry refused to promote him. Therefore, Malone has not shown that he worked in an environment that he "subjectively perceive[d]" to be racially hostile. Miller, 277 F.3d at 1276 (quotation marks omitted). And Malone never specified what the "harassment" he allegedly suffered consisted of. Malone stated that his supervisors began "micromanaging" him when they reported him for failing to turn in an evaluation on time. By any objective measure, one report for filing a report late is not "an environment that a reasonable person would find hostile or abusive." Id. (quotation marks omitted). While Malone also claims that he was threatened, he does not explain when these threats happened or what they consisted of. He does not describe any incidents of physical intimidation or humiliation. See id. He also says he was subject to a "downgraded evaluation," but his evaluation stated that he had "Achieved Results" and his supervisor provided a positive reference check for one of his DHO applications.

Second, Malone can point to no evidence that any of the alleged harassment he described was race-based.  Malone's conclusory statements that Captain Pryor's behavior toward him must have been race-based are pure speculation.  And they are contrary to the allegations Malone makes in his complaint: that Captain Pryor mistreated Malone primarily due to his own desire for a DHO position.  The fact that the alleged harassment took place after Malone filed his EEOC complaint may offer evidence in support of a retaliation claim, but alone that is not enough to show that he suffered discrimination based on his race.  Malone also says he was the only lieutenant at FCI Marianna who was subject to this close scrutiny, but he points to no evidence in the record about how many other lieutenants were white.

D. Malone Did Not Show that He Suffered Unlawful Retaliation

Finally, Malone says he was subject to unlawful retaliation in violation of Title VII and the Rehabilitation Act when he was removed from the SHU; denied his preferred shifts; was refused assignments; and was subjected to micromanagement, harassment, and a lowered evaluation score after he filed an EEOC complaint.

Title VII prohibits employers from retaliating against employees who report race discrimination in the workplace.  Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 273, 129 S. Ct. 846, 849 (2009).  A plaintiff makes out a prima facie case of retaliation by showing that he: (1) engaged in statutorily

16

protected activity; (2) suffered an adverse employment action; and (3) established a causal link between the protected activity and the adverse action. Bryant v. Jones, 575 F.3d 1281, 1307–08 (11th Cir. 2009). In the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (quotation marks omitted).

Malone has not shown a causal connection between his EEOC complaint and any adverse employment action. First, Malone was removed from the SHU on May 9, 2016, and he filed his EEOC complaint on May 12, 2016. Malone says his supervisors must have known that he started discussing his complaints with EEOC in April 2016, because he says the normal procedure is that "after a verbal complaint is made to the EEO, the EEO counselor contacts the complainant's supervisors to put them on notice of the pending action without providing specific details about the complaint." But Malone cannot point to any evidence that his supervisors were, in fact, made aware of his complaint. Nor does his affidavit, which merely speculates that his supervisors must have known about his complaint and does not specify who exactly would have been informed or when they would have been informed, create a genuine issue of material fact on this point. See Cincinnati Ins. Co. v. Metro. Props., Inc., 806 F.2d 1541, 1544 (11th Cir. 1986)

17

(holding that "contentions which are based on mere speculation and conjecture are . . . impermissible" to defeat a summary judgment motion).  Therefore, removing Malone from the SHU could not have been illegal retaliation.  There is simply no record evidence that his supervisors knew about his EEOC complaint at the time.

As for the "downgraded performance evaluation," Malone has offered no evidence that this was causally related to his EEOC complaint.  The evaluation measured whether Malone met objective criteria such as the number of calls he was able to monitor per shift.  Malone does not explain how these objective measures were or even could have been manipulated on this record.

The alleged close scrutiny of Malone's work, letter of counseling after the death of an inmate, and reference checks do not constitute adverse employment actions, as Malone does not show that these actions negatively impacted him in any material way.  See Johnson v. Miami-Dade County, 948 F.3d 1318, 1326–27 (11th Cir. 2020) (per curiam) (finding that a series of "negative monthly evaluations are not material adverse employment actions" where the employee failed to show how they amounted to "changes in the terms and conditions of his employment")  Indeed, the counseling letter is not considered discipline; Pryor said he would hire Malone in his reference; and Malone's vague allegation that he was subjected to close scrutiny does not appear to have affected his performance.

**AFFIRMED.**

18