[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13561

_____

CLYDE ANTHONY,

Plaintiff-Appellant,

*versus*

STATE OF GEORGIA, et al.,

Defendants,

GEORGIA DEPARTMENT OF PUBLIC SAFETY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-05303-SDG

_____

Before BRANCH and GRANT, Circuit Judges, and HINKLE,* District Judge.

BRANCH, Circuit Judge:

Clyde Anthony appeals the district court's grant of summary judgment to his former employer, the Georgia Department of Public Safety ("Department").  In this civil appeal, Anthony argues that the district court erred in concluding that he failed to make out a *prima facie* case of Title VII race discrimination regarding (1) the Department's investigation of an incident stemming from his alleged intoxication at work and (2) the Department's failure to promote him to corporal while he was on administrative leave. Anthony also raises a separate evidentiary argument, alleging that the district court erred in refusing to admit a document he alleges is from the Equal Employment Opportunity Commission ("EEOC") because it lacked authenticity, was hearsay, and was potentially an expert witness report with improper legal conclusions.  We conclude that the district court properly granted

_____

* Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

summary judgment on both claims, although we affirm the grant of summary judgment on the investigation claim for different reasons than those relied upon by the district court. Further, we conclude the district court did not abuse its discretion in refusing to admit the document allegedly from the EEOC. Accordingly, we affirm the judgment of the district court.

## I.    Background

### A. Facts[1]

Clyde Anthony, a black male, is a former state trooper who was employed by the Department as a member of the Georgia State Patrol. In August 2017, Anthony held the rank of trooper first class and was a member of Troop C. On August 5, 2017, Anthony contacted several fellow troopers to secure a ride to work that morning. He claimed that he needed a ride because his car had a flat tire. However, one of Anthony's superior officers, Assistant Troop Commander Lieutenant T.J. Jackson, received a report that Anthony needed transportation because he might have been intoxicated and unable to drive to work. Upon further investigation, Jackson was told that "several other people" had heard that Anthony was possibly drunk.

---

[1] At summary judgment, we recite the facts in the light most favorable to Anthony. *See Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013).

Trooper First Class Colby Johnston was sent to pick Anthony up. Johnston reported that there was an odor of alcohol on Anthony. When they arrived at headquarters, Jackson performed two alco-sensor tests on Anthony to determine whether he was impaired.[2] These tests took place at approximately 12:40 pm. According to those tests, Anthony's blood alcohol level was .016 and .014, respectively. Because the results of the alco-sensor tests and the odor established a reasonable suspicion of alcohol use, approximately one and a half hours after the second alco-sensor test, Anthony was given a breath test at a testing facility. According to that test, Anthony's blood alcohol level was .000, indicating no presence of alcohol.

Following the testing, Anthony was taken back to his home, where he called Troop C Commander Captain Nikki Renfroe. Renfroe informed Anthony that he would be placed on administrative leave pending an investigation. The investigation was a troop-level one conducted by Renfroe. At the end of the investigation, Renfroe recommended that Anthony remain on administrative leave, that he be required to undergo a "fitness for duty evaluation specific to alcohol dependency," and that he receive professional counseling sessions. Renfroe sent her recommendation to Commanding Officer Major Tommy

---

[2] The alco-sensor test is a preliminary breath test utilized out in the field to determine if someone suspected of alcohol use needs to undergo a more extensive breath test at a testing facility.

Waldrop, who agreed with her recommendation and approved it for implementation.[3]  While on administrative leave, Anthony received full pay and benefits.  Anthony's administrative leave lasted nearly six months.

As part of the investigation, Renfroe monitored Anthony's social media accounts while he was on administrative leave.  At some point during September 2017, Renfroe saw a video posted on Anthony's Facebook profile where he was marketing an at-home breathalyzer device.  Concerned that Anthony was marketing an alcohol-related device and that his marketing of the device might implicate the Department's policy against secondary employment,[4] Renfroe forwarded the video link to Waldrop, and

---

[3] At the time of the incident, Waldrop was the Commanding Officer Major of the Georgia State Patrol.  He was appointed to that position by the Georgia Commissioner of Public Safety.  When asked about why he approved Renfroe's recommendation to keep Anthony on administrative leave and require him to undergo a fitness for duty evaluation and counseling, Waldrop responded, "Because my job is to support the captains to make their troops run smoothly.  And [Renfroe] conducted the investigation through her troop, through her subordinates.  And that was the information that she gave me. My job is to support her in the information that she gives me."  While Waldrop approved Renfroe's recommendation regarding Anthony's discipline, there is no evidence he made the initial decision to place Anthony on administrative leave or participated in the troop-level investigation into Anthony's suspected alcohol use.

[4] The exact terms of the Department's policy against secondary employment are unclear from the record.  As best as we can discern, the Department typically allows employees to engage in secondary employment, pending

the matter was referred to Internal Affairs for further investigation. The investigation into Anthony's Facebook post closed with no disciplinary action taken against Anthony.

On November 16, 2017, during his administrative leave, Anthony voluntarily applied for family medical leave, indicating he was "under doctor's care for stress." Anthony's request was approved, and he was removed from administrative leave and placed on family medical leave. Anthony's doctor later cleared him for work, and he was returned to administrative leave on December 1, 2017, so that he could complete the imposed fitness for duty evaluation and attend counseling. Anthony later completed the counseling and evaluation, and he returned to duty on February 1, 2018. Anthony was not demoted, and he received

---

approval. However, once employees are placed on administrative leave, they are forbidden from participating in secondary employment opportunities related to their roles as law enforcement officers (*e.g.*, security guards).

Considering the Facebook post appeared to show Anthony marketing a breathalyzer device, which is commonly used by law enforcement, Renfroe's concern seemed to be that Anthony's involvement with selling the device might be police-adjacent employment that violated the Department's policy. Anthony understood the policy and was adamant he did not hold a second job while on administrative leave, and he testified at his deposition that he did not seek approval before marketing the device because "[i]t's not a job. . . . I didn't interview. I didn't turn in any Social Security numbers, and it's not guaranteed."

no change in pay as a result of the investigations into the August 5, 2017 alcohol incident and the September 18, 2017 Facebook post.[5]

Anthony was deposed during the lawsuit's discovery phase. As part of his testimony, Anthony identified Corporal John McMillan, a white male and member of Troop D, as a comparator who was treated more favorably than Anthony. McMillan's situation is as follows. On September 11, 2015, several fellow officers detected an odor of alcohol on McMillan when he showed up at the scene of a crash. McMillan registered a .019 blood alcohol level on an alco-sensor test, and he admitted he had consumed alcohol while on duty. McMillan was placed on administrative leave with pay, which lasted for approximately three months. Troop D Commander Captain Dennis Dixon conducted the investigation into McMillan's suspected alcohol use. Following his investigation, Dixon recommended that McMillan be demoted from corporal to dispatcher, a civilian position, with a corresponding drop in salary.[6]

---

[5] The concurrence incorrectly asserts that Anthony "ultimately was exonerated." While Anthony was ultimately reinstated and never received a reduction in pay, he was required to undergo a "fitness for duty evaluation specific to alcohol dependency" and receive professional counseling sessions. Because these requirements were conditions of his reinstatement, it is incorrect to assert that he "ultimately was exonerated."

[6] As the commanding officer of the Georgia State Patrol, Waldrop approved Dixon's recommendation for McMillan's ultimate discipline. But, like with

At some point during Anthony's administrative leave, one of his supervisors, Corporal Chad Harris, instructed Anthony "not to have any involvement with any Departmental matters" while he was on administrative leave.  Anthony was interested in applying for a promotion to corporal, but because of this comment, and without seeking any clarification, Anthony opted not to take the corporal exam required to receive the promotion.[7]

## B. Procedural History

On March 9, 2020, Anthony filed a second amended complaint against his former employer, the Department, alleging that it discriminated against him because of his race in violation of Title VII.  He alleged that he was placed on administrative leave from August 5, 2017, through January 29, 2018, following an investigation into his violation of the substance abuse policy and that white employees who "violate[d] the substance abuse policy were not placed on administrative leave of this duration."  He alleged that the duration of his administrative leave was lengthened by (1) the investigation into his Facebook post that was eventually "swept under the rug," (2) his "medical treatment for stress caused by [the Department] placing him on administrative leave," and (3) the Department's requirement that he undergo a

---

Anthony, there is no evidence Waldrop participated in the troop-level investigation into McMillan, which was conducted by Dixon.

[7] There was no regulation in place that precluded Anthony from taking the corporal exam while on administrative leave.

fitness for duty evaluation and counseling.  Anthony also alleged that black "employees are discriminated [against] on the basis of race in regards to promotions," and that he was denied a promotion to corporal because of his race.

Following discovery, the Department moved for summary judgment, arguing that Anthony could not make a *prima facie* case of discrimination related to the investigation.  Specifically, it argued that the period of time an employee is on administrative leave is dependent on a "number of factors" and that there is "no one-size-fits-all approach."  The Department pointed to Anthony's medical leave and the investigation into the Facebook post as reasons his administrative leave was lengthened.  It argued it had a legitimate, nondiscriminatory reason for placing Anthony on administrative leave, as it had reasonable suspicion to believe that he reported for duty with alcohol in his system.  It also contended that Anthony was unable to identify any similarly situated white employees, arguing that McMillan was not a proper comparator because he was demoted, while Anthony was not.  The Department also asserted that Anthony could not make a *prima facie* case based on the Department's failure to promote him because he failed to take the corporal exam while on administrative leave, which is a prerequisite to being promoted to corporal.

Anthony responded to the Department's motion for summary judgment.  In regard to the investigation claim, Anthony argued that McMillan was similarly situated to him because both were employed as state troopers and both were investigated for

reporting to work under the influence of alcohol. He also emphasized that "[t]he discrimination lies in the manner that the two investigations were handled differently." And for the failure-to-promote claim, Anthony contended that he was denied access to a promotion because Corporal Chad Harris, a supervisor, instructed Anthony "not to have any involvement with any Departmental matters" while he was on administrative leave. Thus, he argued he had "no reason to defy his supervisor by investigating if he was able to take the exam during" his administrative leave.

In support of his arguments, Anthony attached an excerpt he claimed was from his EEOC file. This document was titled "Clyde Anthony v. Georgia Department of Public Safety," and it offered a conclusion that race was a significant factor in determining when a trooper would be promoted to supervisor by the Department, a "fact" the document asserted was "corroborated by . . . data analytics." The document did not list an author or any other identifiers.

The Department replied to Anthony's response. It argued once again that Anthony failed to establish a *prima facie* case of discrimination related to its alcohol investigation of him and that McMillan was not a proper comparator because he "held a different rank, reported to different supervisors, admitted to having alcohol in his system, and faced much more severe repercussions." It also argued that Anthony failed to establish a *prima facie* case on his failure-to-promote claim because there was no rule precluding him

from taking the Corporal Exam while on administrative leave. Finally, the Department argued that the document allegedly from the EEOC was inadmissible because it (1) was hearsay, (2) was unauthenticated, (3) sought to introduce improper expert testimony without a qualified expert, and (4) improperly reached the ultimate issue that the Department's promotional practices were based on race.

In a report and recommendation ("R&R"), the magistrate judge recommended that the Department's motion for summary judgment be granted. For the claim related to the alcohol investigation, the magistrate judge determined that Anthony did not establish a *prima facie* case of discrimination based on race because, while McMillan was similarly situated to Anthony, the Department did not treat McMillan more favorably, as McMillan was demoted and Anthony was not. For the failure-to-promote claim, the magistrate judge determined that Anthony did not establish a *prima facie* case because he did not offer any evidence that Corporal Harris's instruction was based on race. Finally, the magistrate judge declined to consider the alleged EEOC document, pursuant to Federal Rule of Civil Procedure 56(c)(2), because it was unauthenticated, contained improper legal conclusions, and failed to show that the unidentified author was qualified as an expert.

Anthony objected to the R&R on three grounds. First, Anthony argued that the magistrate judge incorrectly concluded that McMillan was not treated more favorably. Second, Anthony argued that Corporal Harris's instruction denied him the

opportunity of taking the corporal exam, an opportunity provided to white employees.  Finally, Anthony argued that the magistrate judge improperly failed to consider unauthenticated portions of the alleged EEOC document related to Anthony's claims.

The district court adopted the R&R in its entirety and granted the motion for summary judgment.  In its *de novo* review of the issues to which Anthony objected, the district court concluded Anthony could not establish a *prima facie* case of race discrimination based on his alcohol investigation claim, as Anthony was similarly situated to McMillan but not treated less favorably because McMillan was demoted and his salary was reduced following his administrative leave, while Anthony was not demoted and his salary was not reduced.  The district court also concluded that Anthony could not make a *prima facie* case on his failure-to-promote claim, as he failed to show he was "due consideration for the corporal position" because he did not take the exam and he presented no evidence to show that Corporal Harris gave him incorrect information because of his race.  Finally, the district court concluded that the magistrate judge properly declined to consider the alleged EEOC document because Anthony did not authenticate it and failed to explain why it would be admissible despite containing hearsay, legal opinions, and expert conclusions.

Following the entry of a final judgment, Anthony timely appealed.

## II.    Discussion

### A. Whether the district court erred in granting summary judgment to the Department as to Anthony's Title VII discrimination claims

Title VII of the Civil Rights Act of 1964 makes it illegal for employers

> to fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race . . . .

42 U.S.C. § 2000e-2(a)(1).  Anthony contends the Department violated Title VII and racially discriminated against him in (1) the Department's investigation of his alleged alcohol use during work hours and (2) the Department's failure to promote Anthony to corporal while he was on administrative leave.  Anthony contends that the district court erred in granting summary judgment to the Department as to each of these issues.

This Court reviews *de novo* the district court's grant of summary judgment.  *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1293 (11th Cir. 2013).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether the movant has met this burden, courts must view the evidence in the

light most favorable to the non-movant. *Ave. CLO Fund, Ltd.*, 723 F.3d at 1294. Nonetheless, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).

### 1. The Department's investigation into Anthony

Anthony argues that he and McMillan were similarly situated and that he was discriminated against on the basis of race when he was treated differently than McMillan during their respective investigations. Specifically, Anthony argues that he was discriminated against because McMillan's administrative leave was shorter than Anthony's and because McMillan was not required to undergo a fitness for duty exam or substance abuse counseling.

In an attempt to avoid the issue he faced below, where his claim was unsuccessful because the district court concluded his discipline was actually *more favorable* than McMillan's, Anthony on appeal attempts to impose artificial divisions on his discrimination claim. As he makes clear in his initial brief, Anthony argues he was similarly situated to McMillan and is asserting alleged discrimination for the "investigation stage—the only stage that [he] is contesting as discriminatory in this case." While we need not decide whether it is legally permissible to divide the "similarly situated" framework into distinct stages of an employer's

investigatory process,[8] because Anthony loses even if we do so, in accordance with his argument, we need only evaluate whether Anthony was similarly situated to and treated differently from McMillan in the so-called "investigation stage."

Under Title VII, a claimant may show discrimination through circumstantial evidence by satisfying the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lewis v. City of Union City*, 918 F.3d 1213, 1220, 1231 (11th Cir. 2019) (*en banc*). Under that framework, the plaintiff bears the initial burden of

---

[8] We note that Anthony's desire to implement divisions into the "similarly situated" framework seemingly contradicts the very purpose behind the comparator analysis. As we have stated, "discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'" *Lewis v. City of Union City*, 918 F.3d 1213, 1223 (11th Cir. 2019) (*en banc*). In the typical Title VII discrimination scenario, a plaintiff looks at the entirety of an investigation and disciplinary process and alleges disparate treatment by pointing to every aspect in which they were treated differently in comparison to a "similarly situated" individual. But here, because Anthony's chosen comparator McMillan was treated *more favorably* than Anthony at the end of their respective alcohol investigations, Anthony desires to fragment the "similarly situated" framework into divisions and argues that the final discipline is wholly irrelevant to his discrimination claim. In doing so, he is asking us to ignore the positive ultimate outcome he received and focus solely on the length of his and McMillan's investigations, the only part of the process in which Anthony was treated differently in a negative way. Thus, Anthony does not seek for us to evaluate his discrimination claim through all differences in comparison to McMillan, as *Lewis* suggests, but instead asks us to pick and choose.

establishing a *prima facie* case of racial discrimination by showing, among other things, that his employer treated similarly situated employees outside his class more favorably. *Id.* at 1220–21.

To prove that an employer treated a similarly situated individual outside the employee's protected class more favorably, the employee must show that he and his proffered comparator were similarly situated in "all material respects." *Id.* at 1224. Generally, a "similarly situated" comparator is an employee who "engaged in the same basic conduct (or misconduct) as the plaintiff," was "subject to the same employment policy, guideline, or rule," had the "same supervisor as the plaintiff," and "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28. Ultimately, "a plaintiff and h[is] comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)).

Here, the district court did not err in finding that Anthony did not establish a *prima facie* case for race discrimination under the *McDonnell Douglas* framework. However, we disagree with the district court's finding that McMillan, the comparator, was similarly situated to Anthony at the investigation stage.

The only similarities between Anthony and McMillan are that they both were state troopers and they both were investigated

for showing up to work intoxicated.[9]   However, the similarities end there.  First, McMillan and Anthony held different ranks at the time of their respective incidents.  Second, McMillan admitted to drinking and, thus, was not subject to any further testing.  Third, Anthony points to no evidence that McMillan was suspected of violating other Department policies, while Anthony was suspected of and investigated for his alleged violation of the Department's secondary employment policy.  Fourth, Anthony voluntarily took family medical leave during his administrative leave, thus extending his administrative leave duration.  Finally, their investigations were conducted by different supervisors— McMillan's investigation was conducted by Troop D Captain Commander Dixon while Anthony's was conducted by Troop C Commander Captain Renfroe.[10]  Anthony presents no evidence that McMillan, a member of Troop D, was supervised by Captain Renfroe, the Troop C supervisor who conducted Anthony's investigation.  Nor does Anthony present any evidence that Major Waldrop, the only person who supervised both Anthony and McMillan, was involved in any way in either investigation.  Thus,

---

[9] McMillan, like Anthony, was investigated for being under the influence of alcohol at work, and both were subjected to alco-sensor tests and placed on administrative leave pending the outcome of an internal investigation.

[10] Anthony was a member of Troop C, while McMillan was a member of Troop D.

McMillan was not "similarly situated" to Anthony in "all material respects."[11] *See Lewis*, 918 F.3d at 1227–28.

Anthony emphasizes that Waldrop implemented both Anthony's and McMillan's final discipline, and, thus, argues that Anthony had the same supervisor as McMillan. But Anthony does not allege that he was similarly situated to McMillan in the discipline stage.[12] Instead, Anthony argues that the alleged discriminatory treatment took place during the investigation stage, arguing that both he and McMillan "should have received the same treatment during" their respective alcohol investigations. Since Waldrop did not participate in either investigation,[13] Anthony's reliance on Waldrop as the individual who ultimately implemented both Anthony and McMillan's discipline—which occurred at the discipline stage that Anthony himself has argued must be carved out from our analysis—is irrelevant to our analysis of whether Anthony and McMillan were similarly situated during the investigation stage.

---

[11] Because Anthony has failed to identify a proper comparator, we need not explore whether McMillan was treated more favorably.

[12] In fact, Anthony does not challenge the district court's finding that he was actually treated more favorably than McMillan at the "discipline stage."

[13] We also note that while Waldrop did make the initial decision to place McMillan on administrative leave, there is no evidence he made the initial decision to place Anthony on administrative leave.

Anthony failed to establish a *prima facie* case of Title VII race discrimination.[14]  Thus, we affirm the district court's grant of summary judgment on the alcohol investigation issue in favor of the Department.[15]

### 2.  The Department's failure to promote Anthony

Anthony argues that he was denied an opportunity to sit for the corporal exam because "his then supervisor told him not to get involved with any [Department] matters while he was on administrative leave."  Thus, he argues that a juror could find a racially discriminatory intent from this instruction, which, he argues, was misleading.[16]

---

[14] Anthony emphasized in his brief and at oral argument that he was unable to continue his secondary employment as a security guard at a church while he was on administrative leave, which Anthony estimated cost him $30,000 to $40,000 in secondary income.  This argument goes more towards the damages Anthony allegedly suffered if he were able to prove his Title VII race discrimination claim, but it does not change our analysis of his *prima facie* case.

[15] Although we are affirming on different grounds, "we may affirm the district court as long as the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." *Ochran v. United States*, 273 F.3d 1315, 1318 (11th Cir. 2001) (quotations omitted).

[16] Harris instructed Anthony "not to have any involvement with any Departmental matters" while he was on administrative leave.  Notably, Harris did not tell Anthony he could not sit for the corporal exam, and Anthony did not ask Harris to clarify his instruction.

To establish a *prima facie* case of race discrimination based on a failure-to-promote theory, a plaintiff must show that he (1) belonged to a protected class; (2) was qualified for and applied for a position that the employer was seeking to fill, (3) was rejected despite his qualifications, and (4) that "the position was filled with an individual outside the protected class." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). The burden of proving "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

Here, the district court did not err in finding that Anthony did not establish a *prima facie* case of race discrimination due to the Department's failure to promote him, because he was not qualified for the corporal position as he did not complete the written exam required for promotion. *See Vessels*, 408 F.3d at 768. Anthony contends that he did not take the exam because of Corporal Harris's comment. But he presents no evidence that this instruction was made with discriminatory intent, so Anthony has failed to establish that race discrimination was the real reason for Corporal Harris's directive. Because Anthony has failed to produce any evidence to create a genuine issue of material fact on his failure-to-promote claim for race discrimination, we affirm the district court's grant of summary judgment in favor of the Department.

**B. Whether the district court abused its discretion in failing to consider as evidence the document Anthony claims is from the EEOC**

Anthony argues the district court erred in refusing to admit the document allegedly from the EEOC that he sought to introduce in support of his failure-to-promote claim. Specifically, he contends that the document need not be authenticated at the summary judgment stage because it was capable of being authenticated at trial and that the hearsay in the document is admissible at summary judgment because the declarant is available to testify at trial. In the alternative, even if the document was inadmissible, Anthony argues that, at trial, he can testify that he received the document from the EEOC.

This Court "review[s] a ruling on the admissibility of evidence for an abuse of discretion." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1276 (11th Cir. 2008). A party may object to the admissibility of evidence presented at the summary judgment stage if the evidence cannot be presented "in a form that would be admissible" at trial. Fed. R. Civ. P. 56(c)(2).

When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Issues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances. *United States v.*

*Campbell*, 26 F.4th 860, 873 (11th Cir.) (*en banc*), *cert denied*, 143 S. Ct. 95 (2022).  Extraordinary circumstances include whether

> (1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party lacked an opportunity to raise the issue at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt: or (5) the issue presents significant questions of general impact or of great public concern.

*Id.*

Here, Anthony has forfeited any arguments as to the district court's findings that the purported EEOC document was inadmissible because it contained ultimate legal conclusions and an unsupported expert opinion because he did not challenge either of these grounds in his opening brief, instead arguing only that the document would not be subject to exclusion on the grounds of lack of authentication and hearsay.

Further, no extraordinary circumstances apply to warrant consideration, because a refusal to consider the issue would not result in a miscarriage of justice, the issue is not one of substantial justice, the proper resolution is not beyond any doubt, and the issue does not present significant questions of general impact or of great public concern.  *See Campbell*, 26 F.4th at 873.  Because Anthony failed to challenge properly on appeal two of the grounds

on which the district court based its judgment, he is deemed to have abandoned any challenge on these grounds, and we affirm as to this issue. *See Sapuppo*, 739 F.3d at 680.

## III.    Conclusion

Because Anthony failed to establish a *prima facie* case of race discrimination on his alcohol investigation and failure-to-promote claims, we affirm the district court's grant of summary judgment. And because Anthony failed to challenge two of the district court's grounds for refusing to admit the purported EEOC document, we also affirm as to the evidentiary issue.

**AFFIRMED.**

21-13561                    HINKLE, J., Concurring                    1

HINKLE, District Judge, Concurring:

I agree that the district court properly granted summary judgment, but I get there by a different route.

The plaintiff Clyde Anthony, a state trooper, drank alcohol on a Friday night, had a flat tire the next morning, and called other troopers for a ride to work. This and other circumstances, including social-media posts seen by another employee, caused an assistant troop commander to believe—reasonably—that Mr. Anthony might have been impaired. Initial tests showed a blood-alcohol level of .014 or .016, below the .02 that is a firing offense but more than a trooper should have in his system while working. Mr. Anthony was placed on administrative leave with pay while an investigation was conducted not just of his condition on this one morning but of his use of alcohol more generally. Mr. Anthony denied any wrongdoing and ultimately was exonerated. He returned to his position.

Nothing about these circumstances suggests race had anything to do with it. Mr. Anthony asserts, though, that a trooper of a different race—in the jargon of employment-discrimination cases, a "comparator"—was treated more favorably.

The alleged comparator, John McMillan, was also a state trooper. He was at work on a different day with a blood-alcohol level of .019. He, too, was placed on administrative leave and investigated. He admitted drinking on the job and was demoted to an unsworn position.

Nothing about the different treatment of Mr. Anthony and Mr. McMillan suggests race had anything to do with it. The exonerated trooper—Mr. Anthony—kept his job. The guilty trooper—Mr. McMillan—was demoted. The obvious reason for the different treatment was that one was innocent, the other guilty.

To be sure, Mr. Anthony also complains that his investigation took longer than Mr. McMillan's. That seems unsurprising; one might reasonably expect it to take longer to investigate a contested charge than an admitted charge. Moreover, Mr. Anthony sought medical leave during the investigation. Because of the medical issues and alcohol use, he was reasonably required to submit to a fitness-for-duty evaluation before his return. The record includes no evidence that race had anything to do with the medical leave or fitness-for-duty evaluation. On those issues, Mr. McMillan is not a comparator—he was not required to undergo a fitness-for-duty evaluation, but he did not have the same medical issues and was not put back to work as a trooper.

The bottom line: the district court properly granted summary judgment because nothing in the record would support a finding that race was a reason for Mr. Anthony's treatment. I would affirm on that basis. The majority is correct that Mr. McMillan is not a proper comparator on the length-of-investigation and fitness-for-duty issues. But on the question whether Mr. Anthony could properly be placed on leave and investigated, Mr. McMillan is very much a proper comparator. Mr. Anthony loses on

21-13561                    Hinkle, J., Concurring                    3

this issue not because Mr. McMillan was different, but because he was the same—and his treatment was the same.

The difference in this analysis and the majority's makes no difference in the outcome. But on different facts, the different analysis would produce different results. Had Mr. Anthony been demoted while Mr. McMillan kept his job, this case would properly go to trial. Had Mr. Anthony been placed on leave while Mr. McMillan was allowed to keep working, this case would properly go to trial. Much ink can be—indeed has been—spilled over how to identify a proper comparator, but in the end, the most important question is simply this: on any given set of facts, could a jury reasonably conclude that race was a motivating factor in the decision at issue? Here, the answer is no.