**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11332

Non-Argument Calendar

_____

ANDRE WHITE,

*Plaintiff-Appellant,*

*versus*

SECRETARY OF VETERANS AFFAIRS,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:23-cv-00144-RH-MAF

_____

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Andre White, pro se, appeals the district court's summary judgment for the defendant on his employment-discrimination claim. We affirm.

## I.

White is a former employee of the Department of Veterans Affairs. He worked as a lead program analyst in the business automation section of the Office of the Inspector General for about three months of a one-year probationary period. During that time, his primary responsibility was developing InfoPath healthcare inspection forms. Inspectors use the forms to collect data from more than 40 facilities about twice a year, and the forms are also used to publish reports to Congress and to the public. Mistakes in the development, creation, and deployment of InfoPath forms can directly impact veteran care, so it is critical that they are built to the required medical specifications with the highest attention to detail and exactness.

Initially, White received guidance in developing the inspection forms from his direct supervisor, Misti Kincaid. Kincaid met a few times with him and a coworker who was also in training, and she met with him one-on-one a few times. She provided previous versions of the forms assigned to him, along with specifications, guidelines, examples, and templates for the new forms. She also allowed him to "shadow" her to observe work she was doing on other forms. From time to time, she would access the inspection forms he was working on and provide feedback about errors she found. Those errors included incorrect fonts, spacing, formatting, and colors and sizing of different fields. He told her he understood and knew how to complete the forms correctly.

According to Kincaid, it became clear that White did not understand the training and was not following directions. Even though he kept saying he understood and knew what to do, his forms were not of passable quality for production. He used extra padding, incorrect and inconsistent fonts and spacing, inconsistent formats, and checkboxes not tied to the correct underlying data objects, among other problems. She reviewed the errors with him, but he continued to make the same mistakes and did not ask pertinent questions, let her know that he did not understand his instructions, or ask for help from her or other supervisors. Kincaid expressed her concerns about White's performance to William Lawson, who was her direct supervisor and White's second-line supervisor. She asked Lawson to provide him with additional training.

Lawson reviewed White's completed forms and contacted a human resources manager, Eric Winters. Lawson expressed concern about the unacceptable number of errors in White's forms, and Winters helped him prepare talking points for a performance review meeting with White.

Lawson and another supervisor met with White on October 1, 2021, to review three of the five forms White had turned in as finished products. They found numerous errors in all three. Some of the errors appeared to be related to an InfoPath display problem, but others—including missing borders and instructions, misplaced buttons, and incorrect background colors—had nothing to do with the display. After the meeting, Lawson sent White an email summarizing their discussion and asking him to continue re-working

the five forms assigned to him. The email expressed Lawson's belief that White had the tools and training he needed to perform his job and that clear expectations had been established for the assigned forms. Lawson also reminded White that failure to meet those expectations could result in his termination.

White revised the InfoPath forms and resubmitted them about a week after his meeting with Lawson. Several days after that, on October 14, 2021, Lawson contacted Winters and told him he wanted to move forward with White's termination. On October 20, Lawson prepared a memorandum of record documenting "White's failure to follow directions and a lack of attention to detail that resulted in an inability to produce work without an unacceptable level of errors." The memo stated that White had been trained and notified of expectations, but he did not follow instructions and changed the process to do things "his way." According to the memo, this led to unacceptable results with out-of-standard formats and wasted time by two levels of supervisors who were required to correct his InfoPath forms to make them useable.

Meanwhile, on September 27, 2021, White requested a medical exemption to the VA's COVID-19 vaccination requirement because he had antibodies from a prior infection. His request was denied, and on October 26, 2021—not knowing that Lawson had already taken steps to terminate his employment—he requested reconsideration of the decision on his medical-exemption request. The same day, he also submitted a request for a religious

exemption.  Kincaid granted his request for a religious exemption on November 9, 2021.

A few days after Kincaid granted his request for a religious exemption, White received a call about the vaccine mandate from John Daigh, an Assistant Inspector General for Healthcare Inspections at the VA.  Daigh also sent him a message that said, "Andre, I believe the policy of the Government is that you obtain the immunization, even if you have had COVID . . . . there may be a timing issue that suggest [sic] you have the immunization some period of time after your illness . . . . but the government's policy is that you obtain an immunization for COVID or you look for another job.  Please let me know when you would like to discuss." (ellipses in the original).  Daigh was not aware that White had requested and been granted a religious exemption, and he was not involved in White's termination.

Lawson sent White a formal termination letter on November 16, 2021.  The letter said that White was being terminated during his probationary period "due to unacceptable conduct by failing to follow instructions and poor performance."

White filed a civil complaint against the Secretary of Veterans Affairs in federal district court, claiming that his termination constituted religious discrimination in violation of Title VII of the Civil Rights Act.  He also claimed that "[f]alse accusations of misconduct and poor performance" associated with his termination constituted defamation, and that the VA's response to his post-

6                    Opinion of the Court                    25-11332

termination request for documents under the Freedom of Information Act was unreasonably delayed.

After several months of discovery, the Secretary moved for summary judgment. The district court granted the motion, concluding that the undisputed facts established that White was terminated for poor performance. The court also concluded that it lacked jurisdiction to hear the defamation claim because White failed to complete the jurisdictional prerequisites for bringing a claim under the Federal Tort Claims Act, and because the claim was barred by sovereign immunity in any event. Finally, the court determined that the Freedom of Information Act claim was moot because the undisputed evidence showed that the VA had responded to the request and produced the available documents.

White now appeals the district court's summary judgment in favor of the Secretary on his employment-discrimination claim.[1] He also appeals the district court's denial of his two motions for reconsideration.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-movant. *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023).

---

[1] White has abandoned his defamation claim and his claim under the Freedom of Information Act by not making any argument in support of those claims on appeal. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). We therefore affirm the judgment on those claims without further discussion.

25-11332                Opinion of the Court                7

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We review the district court's denial of a motion for reconsideration for abuse of discretion.  *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010).

### III.

### A.

Title VII provides that all personnel actions in federal executive agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  This means that "personnel actions must be made in a way that is not tainted by differential treatment based on a protected characteristic."  *Terrell v. Sec'y, Dep't of Veterans Affairs*, 98 F.4th 1343, 1351–52 (11th Cir. 2024) (quotation omitted).  So a plaintiff in a federal-sector discrimination case can prove a violation of Title VII by showing that his employer allowed discrimination to contribute to a personnel action, even if discrimination was not the but-for cause of the action.  *Id*. at 1352.

To survive summary judgment here, White was required to proffer evidence sufficient to support a jury finding that discrimination based on his religion played some part in the decision to

terminate his employment. *See Anderson*, 477 U.S. at 248; *Terrell*, 98 F.4th at 1352. He failed to do so.

As evidence that his request for a religious exemption to the COVID-19 vaccine mandate was a factor in the decision to terminate him, White pointed to Daigh's message—sent only a few days before he was fired—telling him to get vaccinated or "look for another job." But Daigh's warning does not show that White's religious objection to vaccination played any part in his termination because the undisputed evidence also showed that Daigh did not know that White had requested a religious exemption and was not involved in the decision to terminate him. And other undisputed testimony established that (1) White's direct supervisor—the same supervisor who granted his request for a religious exemption—complained that despite training and feedback, he "continually failed to produce quality forms, follow instructions, ask for help, or admit that he didn't know how to build forms" to the required specifications; (2) although White claimed that the problems in his inspection forms were caused by a computer display error, he admitted in his deposition that many errors in his forms had nothing to do with the display; and (3) White's second-line supervisor made the decision to fire him for poor performance before he submitted his request for a religious-exemption to the vaccine mandate.

On appeal, White argues that Lawson made admissions showing that White corrected his assigned forms after the performance-review meeting and that some of his forms were "100% correct." According to White, those statements indicated that the

proffered justification for his termination—poor performance—was pretextual. He also argues that unspecified evidence showed that another employee who did not request a religious exemption from the vaccine requirement made similar errors in his inspection forms but was not terminated.

The evidence before the district court at summary judgment did not support these arguments. Even if we assume that the district court could consider Lawson's statements, they did not establish a genuine dispute about whether White's religion played a role in his termination. In the email White references, Lawson informed him that three of the five forms he resubmitted after the performance-review meeting were complete, but Lawson was still working on the other two. And although Lawson reportedly told an EEOC counselor that White "did some forms 100% perfect," he also told the counselor that White's inconsistent performance showed that he "chose what he wanted to do" and that the decision to fire White was based on his failure to follow instructions, lack of attention to detail, and poor attitude. Those statements do not support White's argument that his work was satisfactory or that it improved to acceptable levels after Lawson's performance review. And in any event, White's disagreement about whether his performance was objectively bad is irrelevant—the question here is not whether Lawson's criticisms were reasonable or fair, but whether discrimination played a role in his termination decision. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists

outside of the decision maker's head."). The evidence showed that White's supervisors reasonably believed that his work was not acceptable, and that he was fired for that reason.

As for White's argument that evidence of a vaccinated employee's performance issues supported his discrimination claim, we will not consider that argument now because he presented no such evidence in response to the motion for summary judgment. As we have explained before, the "rule is that a federal appellate court may examine *only* the evidence which was before the district court when the latter decided the motion for summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (emphasis in the original) (quotation omitted). Based on the evidence before it, the district court correctly granted summary judgment for the Secretary on White's employment discrimination claim.

## B.

White also argues that the district court should have granted his motions for reconsideration. A district court can grant reconsideration under Rule 59 based on newly discovered evidence or to correct "manifest errors of law or fact." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1250 (11th Cir. 2023) (quotation omitted). "But a Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (quotation omitted and alteration adopted).

For the most part, White's motions for reconsideration reiterated the arguments made in his summary judgment response:

that his performance was not as bad as his supervisors claimed, and that Daigh's warning to get vaccinated or look for another job indicated that discrimination played a role in the decision to fire him. In his first motion, White also argued for the first time that he was not given adequate notice of the deficiencies in his performance before his termination, in violation of federal statutes and his constitutional due process rights. And in his second motion, he argued for the first time that emails between VA employees in October 2021 showed that a vaccinated employee made similar errors but was not fired.

The district court correctly noted that these arguments were or could have been made before the entry of summary judgment. White has made no attempt to show that either his new arguments or the documents he submitted with his second motion were unavailable to him when he responded to the motion for summary judgment. The district court did not abuse its discretion in denying the motions for reconsideration.

## IV.

The district court did not err in granting the Secretary's motion for summary judgment on White's Title VII claim because the undisputed evidence would not have supported a jury finding that religious discrimination played any part in the decision to terminate his employment. *See Anderson*, 477 U.S. at 248; *Terrell*, 98 F.4th at 1351–52. And the district court did not abuse its discretion by denying his motions for reconsideration because those motions did not identify manifest errors or present law or evidence that was

12                    Opinion of the Court                    25-11332

unavailable before summary judgment was entered.  We therefore affirm.

**AFFIRMED.**